[No. 34582. Department One. November 6, 1958.]

KATHLEEN F. JOHNSON, *Appellant*, v. WARREN P. JOHNSON, *Respondent.*[1]

[1]Reported in 330 P. (2d) 1075.

*Ned W. Kimball* and *Orly J. Sorrel,* for appellant.

*Melvin T. Swanson,* for respondent.

HUNTER, J.—Kathleen F. Johnson commenced this action for divorce in the superior court of Kitsap county on September 26, 1955. Her husband, Warren P. Johnson, filed a cross-complaint in which he also prayed for a divorce. At the time of the first trial, May 28, 1956, the parties' only child, Michael, was about seven years of age. At the conclusion of the trial, the court granted the husband a divorce, and awarded him all of the community property, but gave the wife a judgment for one thousand dollars against the husband, payable one year after entry thereof; awarded custody of the child to the husband until August 1, 1957,

at which time the custody was to transfer automatically to the appellant with support payable at that time.

Both parties appeal to this court. The decision on the first appeal is reported in 50 Wn. (2d) 56, 308 P. (2d) 967 (1957). There we said:

" . . . The appellant mother's appeal is directed solely to the deferral of custody until August, 1957, and the cross-appellant father's to the custody thereafter."

In discussing the custody issue, we stated:

"The appellant [mother] was taken by surprise when the court indicated its decree would be predicated upon appellant's nervous condition as revealed by her demeanor on the witness stand. We think the trial court abused its discretion in refusing to reopen under such circumstances."

The judgment was reversed, and the cause remanded for a new trial.

The cause came on for retrial on July 1, 1957. After the trial, the court re-entered judgment substantially as provided in the previous divorce decree and further providing (1) that the defendant father be awarded *permanent* custody of the child, subject to reasonable visitations by the plaintiff mother including her right to custody for one month during the summer vacation; (2) that the one thousand dollar judgment previously awarded the plaintiff in lieu of her interest in the community assets be paid at the rate of twenty-five dollars per month; (3) that the defendant father pay the plaintiff additional attorney's fees of five hundred dollars and the balance of her costs in the first appeal at the rate of twenty-five dollars per month; and (4) ordering the plaintiff be restrained from the use of garnishment process except by leave of court granted only after notice to defendant, and permitting him an opportunity of hearing.

From the judgment, the plaintiff mother has again appealed.

The appellant's assignments of error raise three basic questions, namely: Did the trial court err (1) in awarding custody of the child to the respondent father; (2) in ordering that the one thousand dollar judgment awarded to ap-

pellant mother be paid at the rate of twenty-five dollars per month; and (3) in restraining the appellant from using garnishment process against respondent except by leave of court after notice to respondent, and permitting respondent an opportunity of hearing? These questions will be considered seriatim.

*First*, in reference to the question of custody, the court found:

"IV. The parties have one child, born July 11, 1949. At the time of commencement of this action, the child of the parties, Michael Johnson was residing with defendant and at a hearing held shortly after his custody was temporarily awarded the defendant. Michael Johnson has remained in defendant's custody continuously since, except when he has been with plaintiff during visitations. Prior to the previous trial plaintiff suffered from a reactive depression during which she could not adequately perform the mother role, and to have permitted her exclusive custody of Michael while she was in that condition would have been harmful to the child. During plaintiff's troubles Michael had become maladjusted. The stresses causing plaintiff's reactive depression were no more than the normal conflicts of life. While there is medical testimony that plaintiff's depression is not likely to recur, it cannot be foretold as of today, whether plaintiff's second marriage will produce emotional stress, and if so, how plaintiff will react thereto. During the past year, defendant has given Michael excellent care and he is now a perfectly adjusted child. *The child's best interests are paramount and they are better served by award of his custody to the defendant.* There is a much closer bond of affection between Michael and the defendant than between Michael and the plaintiff. The defendant has a personality which coupled with his deep seated love for his son, together with his demonstrated interest, solicitude, care and watchfulness, offer better promise for Michael's welfare if he be awarded custody. *The defendant's good character and unquestioned fitness is the better influence for Michael's welfare.*

"V. That at the time of trial of this cause, both plaintiff and defendant were proper persons to have custody of the child." (Italics ours.)

■ The appellant urges the trial court erred in failing to award the custody of *a child of tender years* to her, in view

of the court's affirmative finding of her fitness. While we do not concede that the child involved in this litigation is "of tender years," this question need not be answered, since it *alone* is not determinative of the ultimate question: what will best serve the interests and welfare of the child?

In *Patterson v. Patterson*, 51 Wn. (2d) 162, 316 P. (2d) 902 (1957), the trial court, in a custody proceeding, made no specific finding as to the unfitness of the mother. There, we said:

". . . In any event, under the circumstances, the failure of the trial court to enter a specific finding negating the fitness of the mother to have the custody of the children is of no legal significance. The trial judge found that the father was a fit and proper person, and that he should have the custody of the children. The record supports these determinations.

"The so-called 'tender years doctrine,' referred to above, *is merely one facet* of the more basic principle: *that the best interests and welfare of the children is the controlling consideration in child custody cases.*

"In *Chatwood v. Chatwood*, 44 Wn. (2d) 233, 239, 266 P. (2d) 782, we attempted to state rather emphatically that several significant guiding principles as to the disposition of child custody matters may be gleaned from our numerous decisions as follows:

" '1. Each case must be considered and determined separately, upon its own facts and the situation before the court;

" '2. The best interests and welfare of the children in custody matters are the paramount and controlling considerations. The interests of parents, including claims of the right to child custody, are subsidiary in relation to consideration of the welfare of their children;

" '3. Those factors usually inherent in the mother-child relationship must be considered in relation to the age and sex of the children. However, in this connection, socially desirable traits of character, emotional maturity, economic ability or stability of the mother, cannot be disregarded;

" '4. The findings of the trial courts will be accepted as verities on appeal, unless the record evidence clearly preponderates against such findings;

" '5. Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the

trial judge, who has the distinct advantage of seeing and hearing witnesses and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.'" (Italics ours.)

The rules were again set forth, in substance, in *Sweeny v. Sweeny*, 52 Wn. (2d) 337, 324 P. (2d) 1096 (1958). In that case, we said:

"In child custody cases, . . . Conclusions reached by trial courts will not be disturbed, unless there is a *clear showing of abuse of discretion*. (Citations omitted)" (Italics ours.)

■ The record discloses that, at the time of the trial in July, 1957, the minor child had been with his father for one year and nine months. During that time, the boy changed from a youngster who was distraught and maladjusted (resulting from his father's and mother's separation) to an adjusted, normal child. He is happy in his surroundings and has developed a close affection for his father. He is making good progress in school and by regular attendance in church where his father sings in the choir, he is receiving splendid Christian training. His father is stable, responsible, and of good moral character. He is a college graduate and a former baseball player; he is quite interested in athletics and takes his son with him when attending various athletic contests, spending his recreational time almost exclusively with him. The child is permitted liberal visitation periods with the mother.

Michael is now nine years of age and has been with the respondent since the age of six years and three months. To take him away from his father at this time and change his environment, established during these years, could very well be contrary to his best interests and welfare. Therefore, we cannot say that the trial court, in awarding custody to the father, can be charged with a manifest abuse of discretion. See *Sweeny v. Sweeny, supra.*

■ The court, however, was without authority to make the award permanent, and the decree should be modified to provide "until further order of the court." Custody orders

are always subject to modification upon a proper showing of changed conditions. See RCW 26.08.110; *Munroe v. Munroe*, 49 Wn. (2d) 453, 302 P. (2d) 961 (1956); *Sweeny v. Sweeny*, 48 Wn. (2d) 872, 297 P. (2d) 610 (1956).

*Secondly,* in reference to appellant's one thousand dollar judgment, the appellant concedes that the language of her first notice of appeal gave this court jurisdiction to review every issue in the first judgment of the trial court, but she argues that when neither she nor respondent assigned any error to the disposition of property rights each waived any right affecting such disposition, and that that issue therefore became *res judicata,* under the law of the case doctrine.

Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953, provides:

"No alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the 'assignments of error' in appellant's brief. . . ."

In *Cook v. Commellini*, 200 Wash. 268, 93 P. (2d) 441 (1939), we said:

"It is true that the opinion upon the former appeal concluded with the statement: 'The judgment is reversed.' *That language must be construed in the light of what was then before the court for determination.* In the body of the opinion, it was recognized, though not expressly stated, that the appeal was only from that portion of the decree which denied the equitable lien upon the insurance money to Albert's Apartments, Inc. The fact is, the *court had no jurisdiction* upon that appeal to make any order with reference to those portions of the decree from which no appeal had been taken. The portions of the decree not appealed from became *res judicata,* and the mortgage, having been foreclosed and the sale made in pursuance of that decree, was legal and binding, and the court was without power to set it aside." (Italics ours.)

In our former opinion in this case, the judgment was reversed *solely* on the question of custody, *and the new trial was granted on that issue only.* Although not expressly stated, this intent is clearly evidenced by a reading of the entire opinion in reference to the *only* issue raised on the first appeal. The new trial being so limited, the trial

court erred in changing the manner provided for payment of the one thousand dollars in the first judgment. That issue was *res judicata* at the second trial.

Respondent contends that the new conditions attached to the payment of the one thousand dollars can be sustained under the authority of RCW 26.08.110. This contention could be sustained *if* the payment was made for support or alimony. However, this award was in lieu of her interest in the community estate and was therefore, in fact, a property settlement. RCW 26.08.110 provides, in part, that the divorce decree

". . . as to the . . . management and *division* of property *shall be final and conclusive upon both parties subject only to the right to appeal.* . . ." (Italics ours.)

Therefore, this issue, not having been raised on the first appeal, was *res judicata* at the second custody trial.

*Third,* in reference to the use of garnishment process, appellant contends that the trial court erred in restraining the appellant from using garnishment process against the respondent, except by leave of court, after notice to respondent permitting him an opportunity of a hearing. Respondent asserts the appellant has used garnishment on one occasion, that it was for malicious reasons and, if not restrained, its use may cost him his employment.

As stated above, the trial court was without jurisdiction to limit in any way the operation of the portion of the first judgment which became final. Therefore, restriction on the use of garnishment proceeding, in enforcing payment of the one thousand dollars, constituted error. However, the court was acting within its jurisdiction in restricting the use of garnishment process for the collection of costs, since we held on the first appeal that costs would abide the final disposition of this matter.

Finally, appellant has made a request for attorney's fees for this appeal. In view of the attorney's fees previously assessed and the respondent's present inability to pay, we are allowing the appellant only the costs of her appeal.

The judgment is modified as specified in this opinion but is otherwise affirmed.

HILL, C. J., MALLERY, FINLEY, and FOSTER, JJ., concur.

[1]Reported in 330 P. (2d) 1072.