[No. 36441.    En Banc.    March 28, 1963.]

MAXINE SHAFFER, *Appellant,* v. JACK EUGENE SHAFFER, *Respondent.**

*Ray W. DeKraay,* for appellant.

*Gladys Phillips,* for respondent.

HUNTER, J.—This is an appeal from the modification of a divorce decree awarding the custody of a 4-year-old girl to the defendant father (respondent). The original decree,

*Reported in 379 P. (2d) 995.

entered in December, 1958, 3 years earlier, awarded custody of the child to the plaintiff mother (appellant) with visitation privileges to the father together with a duty of support payments.

Following the entry of the original decree of divorce, the plaintiff lived in Aberdeen, Washington and the defendant continually visited his daughter. Shortly thereafter, however, the plaintiff moved from Washington to Oregon without notifying the defendant and in violation of the divorce decree. which prohibited her from removing the child from the state without permission of the court. While the plaintiff was absented, the defendant made several futile attempts to locate his child and to exercise his visitation privileges. During this time he continued to maintain his support payments.

Having been unable to locate the plaintiff and the child, the defendant enlisted the aid of the Grays Harbor Prosecuting Attorney. On February 12, 1960, the plaintiff appeared at the prosecuting attorney's office, and together with the defendant, executed a written agreement which permitted her to take the child to Oregon for residence. In this agreement, the plaintiff stated that she had remarried and was then living in Lebanon, Oregon but, in fact, she was not married and was living in Eugene. (The evidence is in conflict as to whether on February 12th she was accompanied by a man who she represented to be her husband.) In reliance on her representations, however, the defendant signed the agreement.

Subsequently, the defendant made several attempts to visit his daughter, but each time he did so the plaintiff either could not be found, refused to permit his visit, or requested him to postpone the exercising of his privilege. Having been denied his privilege so often, he began the present action.

The hearing on the petition to modify began September 21, 1961, and, due to an unexpected but necessary absence of witnesses, a continuance was granted until January 8, 1962. In granting the continuance, the court made specific

provisions for the parties to share the custody of the child over the holidays; the defendant was to have the child between November 4 and December 10, 1961, and again between December 31, 1961 and January 8, 1962. The defendant had the child during the first period and promptly returned her to the plaintiff. When it came time for the second period, however, the plaintiff refused to release her. Prior to his December 31st visit, the defendant made several attempts to contact the plaintiff in order to inform her of the time of his arrival in Oregon to get his daughter. Without having successfully reached the plaintiff, he traveled to her home and asked for the child. The plaintiff informed him that the child was sick with the flu and refused to let him take her. Thereupon, the defendant returned to Washington without seeing his daughter and related this incident to the court when it reconvened on January 8, 1962.

Other evidence introduced at the hearing consisted of facts indicating that the plaintiff had become pregnant by someone other than her husband before her divorce and had had a miscarriage thereafter (The plaintiff denies she became pregnant by a man other than her husband. The court made no findings on this issue.); that she had had affairs with other men subsequent to the decree of divorce (This was denied by the plaintiff and the court made no findings on this issue.); that, although she had been married four times, she was now married to a man in Oregon with a steady job, a nice home, and a desire to support the child; and that, since she was no longer working, she was free to attend to her children. In addition, the following evidence was introduced: The defendant had drinking problems which, although improved, were not eliminated after his divorce and, as a result thereof, he had lost his driver's license; he worked nights in an Aberdeen mill on a job which he had held for 3 years; he lived with his mother and stepfather; and, although having other children to care for, his mother desired to take care of his daughter.

The trial court found that the plaintiff had failed to obey the orders of the court, that she had lied about her marriage and residence in obtaining the agreement of February 12, 1960, that she had made it difficult for the defendant to visit his child, that it was not satisfied the child was sick on December 31, 1961, and that the plaintiff was not a fit person to have custody of the child but that the defendant was. Thereupon, the court modified the decree of divorce, giving custody of the child to the defendant and according rights of visitation to the plaintiff.

The plaintiff contends the court erred in finding that she was not a fit and proper person to have custody of the child and in modifying the decree so as to award custody to the defendant.

She contends that the present controversy has arisen over visitation rights, the violation of which is not a ground for modification, and that the evidence does not support the trial court's conclusion that she is not a fit and proper person to have custody of the child.

The only basis on which the trial court might properly have modified the divorce decree so as to change the custody of the child to the defendant is that such action was in the best interest and welfare of the child. *Johnson v. Johnson,* 53 Wn. (2d) 107, 330 P. (2d) 1075 (1958); *Chatwood v. Chatwood,* 44 Wn. (2d) 233, 266 P. (2d) 782 (1954).

The child, since her birth, has resided with the plaintiff and, as stated by counsel in open court, has been with her during the pendency of this appeal. Except for extensive testimony regarding the denial of the father's visitations, the record is barren of evidence showing the plaintiff has in any manner neglected her daughter, nor is there any evidence that her daughter was not a normal and a well-adjusted child. The plaintiff is now married to a man who has a steady job, a good home, and an interest in the child; she has two other daughters by her former marriage, one 6 years of age and the other 12 years of age, also residing with her.

The major portion of the testimony taken at the hearing involved the problems which the defendant has had in exercising his visitation privileges. The trial court is justified in being concerned about the lack of regard which the plaintiff has shown for the orders of the court, especially in view of her denial of the defendant's visitation privileges accorded by the original divorce decree and her disregard for the order entered at the time of the continuance. Such conduct should not be countenanced and appropriate action should be taken for the enforcement of the court's orders. However, wilful violation of a court decree cannot, per se, justify a change of custody in every case. *Sweeny v. Sweeny,* 43 Wn. (2d) 542, 262 P. (2d) 207 (1953). As we said in *Thompson v. Thompson,* 56 Wn. (2d) 244, 352 P. (2d) 179 (1960):

"Punishment of the parent for contempt may not be visited upon the child in custody cases. The custody of the child is not to be used as a reward or punishment for the conduct of the parents. *Malfait v. Malfait,* 54 Wn. (2d) 413, 341 P. (2d) 154 (1959); *Annest v. Annest,* 49 Wn. (2d) 62, 298 P. (2d) 483 (1956); *Norman v. Norman,* 27 Wn. (2d) 25, 176 P. (2d) 349 (1947). The best interest of the child is the paramount and controlling consideration. *Johnson v. Johnson, supra.*"

The well-established rule adopted by this court is that the judgment of the trial court in child custody matters will not be disturbed in the absence of a manifest abuse of discretion. *Thompson v. Thompson, supra.* However, upon reviewing the record, we are in doubt as to whether or not the trial court, in the changing of custody to the defendant, considered the infliction of punishment upon the plaintiff for violation of the court's orders.

Therefore, the judgment is reversed and the case is remanded to the trial court for further consideration of the change of custody of the minor child consistent with the views expressed in this opinion. Since a considerable period of time has elapsed from the date of judgment from which this appeal was taken, pertinent evidence of events which have transpired since said date and conditions presently

existing concerning the fitness of the parents and the health and welfare of the child may be introduced for the trial court's additional consideration.

It is so ordered.

DONWORTH, FINLEY, WEAVER, ROSELLINI, and HALE, JJ., concur.

OTT, C. J. (dissenting)—The majority reverse the trial court for the reason that

". . . upon reviewing the record, we are in doubt as to whether or not the trial court, in the changing of custody to the defendant, considered the infliction of punishment upon the plaintiff for violation of the court's orders."

In my opinion, the record and the findings of the trial court sustain the court's findings of appellant's unfitness and that the welfare of the child required that custody be awarded to the respondent.

December 5, 1958, Maxine M. Shaffer, in a contested divorce proceeding, was granted a decree of divorce from Jack Eugene Shaffer. In the original divorce action, the court made no finding of the mother's fitness to have custody of their infant daughter, then only a few months of age. The decree, in this regard, provided "That subject to the further order of the court herein the plaintiff [Maxine M. Shaffer] be and she is hereby awarded the care, custody and control of the minor child of the parties."

September 21, 1961, and again on January 8, 1962, the same trial judge heard the evidence presented upon a petition to modify the decree relative to the custody of the minor child. The record further discloses these facts:

(1) Subsequent to the decree of divorce and prior to her remarriage, appellant became pregnant and had a miscarriage.

(2) Appellant deliberately disobeyed the mandate of the court by removing the minor child from the state of Washington, and, when summoned to account for her conduct, falsely represented that she had remarried and had a good

home for the child. Her testimony in this regard was as follows:

"Q. Were you married in February of 1960 at the time you and Mr. Shaffer signed an agreement by which he agreed to permit you to take your child to the State of Oregon? A. No. I lied about that. I just told him that to get away. I had to be back to work the next day. . . .

"Q. Now this document recites: 'It is my understanding that Maxine has remarried and that she has a home in Lebanon large enough to care for Cindy Joe and her other two children by a previous marriage', and you admit that those statements were false? A. I lied to him because I wanted to get back to Oregon, get back to work. . . ."

(3) The decree of divorce granted to respondent regular visitation privileges with his daughter. Appellant's testimony established that she kept the father from seeing his child for nearly 3 years.

"Q. Now Mrs. Erickson [appellant], did Mr. Shaffer telephone you some time before the first of June of this year, and ask to have this child during the month of June? A. His mother wrote me a letter, but she has never seen the baby since she was a baby. Jack hasn't seen her for years, three years."

After hearing these facts of immorality, dishonesty, and defiance of orders of the court on the part of appellant, the trial court concluded:

". . . That the Court is not satisfied that Plaintiff is at this time a fit person to have custody of said child; that the Court is satisfied as to Defendant's fitness to have custody of said child.

". . .

"The best interest and welfare of said child require that the divorce decree entered December 5, 1958 should be modified so as to award the care, custody and control of . . . [the] minor child of the parties, to the defendant, Jack Eugene Shaffer, until the further order of the Court, the plaintiff to have reasonable rights of visitation with her minor child, the visits by plaintiff until the further order of the Court should be in Grays Harbor County, State of Washington."

We have stated that " . . . respect for law and order, and compliance with court orders, does [*sic*] bear upon fitness." *Sweeny v. Sweeny,* 43 Wn. (2d) 542, 552, 262 P. (2d) 207 (1953). Pregnancy out of wedlock, false representations to those in authority relative to marital status, and deliberate dishonesty are proper considerations in determining unfitness to have custody of a minor child. *Patterson v. Patterson,* 51 Wn. (2d) 162, 316 P. (2d) 902 (1957); *Sweeny v. Sweeny, supra.*

The majority hold that punishment of the parent for contempt may not be visited upon the child, in custody matters, and that custody of the child it not to be used as a reward or punishment for the conduct of the parents. The best interest of the child is the paramount and controlling consideration. *Thompson v. Thompson,* 56 Wn. (2d) 244, 352 P. (2d) 179 (1960).

With these legal principles, I am in full accord. In the instant case, however, the trial court considered not only the appellant's disobedience of the orders of the court but, also, the entire evidence, and found the appellant to be *unfit at this time,* and that *"The best interest and welfare of said child require"* that custody be awarded to the respondent. It is difficult to see how the trial judge could have made it any clearer to the judges of this court that he had the best interest and welfare of the child in mind in entering his order changing custody.

If, since the decree of modification was entered, conditions have changed which may now affect the best interest and welfare of the child, the appellant can seek to regain custody, as provided by law. This court should not reverse a trial court upon the speculation that subsequent facts may merit a change of custody.

Finally, we have consistently held, in custody proceedings, that the findings of the trial court will not be disturbed on appeal, unless the record clearly preponderates against them. *Patterson v. Patterson, supra; Munroe v. Munroe,* 47 Wn. (2d) 391, 287 P. (2d) 488 (1955); *Chat-*

*wood v. Chatwood,* 44 Wn. (2d) 233, 266 P. (2d) 782 (1954); *Sweeny v. Sweeny, supra.*

In the very recent case of *Cumbie v. Cumbie, ante* p. 669, 379 P. (2d) 918 (1963), this court again approved the rule announced in *Chatwood v. Chatwood, supra,* at p. 240:

"5. Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel."

Accord, *Patterson v. Patterson, supra.*

The decree of modification should be affirmed.

HILL and HAMILTON, JJ., concur with OTT, C. J.