[No. 39301. Department Two. November 2, 1967.]

VERNA PAULINE JOHNSON, *Appellant,* v. FRANK CHARLES JOHNSON, *Respondent.**

*Breskin, Rosenblume & Robbins,* for appellant.

*Mary E. Burrus,* for respondent.

HUNTER, J.—This is an appeal from an order modifying a divorce decree by changing custody of an only child of the marriage from its mother to the father.

In 1959 the plaintiff (appellant here), Verna Pauline Johnson, obtained a decree of divorce from the defendant (respondent), Frank Charles Johnson. With the entry of judgment, the plaintiff was awarded custody of their 3-year-old son, Gregory. Visitation privileges were accorded to the defendant and scheduled for every other weekend and a 2-week period during the summer.

For a year after the divorce, the plaintiff lived with her mother, and this arrangement continued until the plaintiff married one Clair Hotten. The marriage to Hotten, however, proved unstable and after the birth of one child, Carla, terminated in divorce. Thereafter, in June, 1963, the plaintiff married Peter Aure, her present husband.

Mr. Aure is a successful salesman with the Olivetti Un-

*Reported in 433 P.2d 217.

derwood Corporation and earns in excess of $1,000 per month. The family lives in a modern 4-bedroom home with a large yard and there are many children in the neighborhood with whom the children play. The family also takes trips together during the summer and in 1963 visited Disneyland. Mr. Aure treats both children as his own and has adopted Carla Hotten, the daughter of the plaintiff's previous marriage. The plaintiff is not employed and devotes her full time to the care of her family.

In 1966, when the defendant filed his petition for modification of the custody award, the record discloses that Gregory, then 9 years old, was happy and well adjusted. His progress in school was that of an average student, and, as a cub scout, he played on the baseball team coached by his stepfather, Mr. Aure. Gregory also belonged to the YMCA and attended summer camp in 1966.

The record shows that the defendant since 1961 has been a boarder in the home of his former mother-in-law and has exercised his visitation privileges with Gregory in her home, at least through 1965.

The dispute from which this case immediately arises, occurred in 1966 when the defendant, then 41 years of age, married his former mother-in-law, the plaintiff's mother and Gregory's grandmother, aged 61. This relationship was completely unacceptable to the plaintiff. She became embittered toward her mother and the defendant, and refused the defendant his visitation rights with Gregory, as provided in the decree. The record further shows that the plaintiff was unable to explain to Gregory his father's remarriage, although he has learned of the marriage and accepted it without apparent difficulty.

After a hearing on the defendant's petition for modification in July, 1966, the trial court determined that there had been difficulty in the visitation program for the two previous years, due primarily to the attitude and activities of the plaintiff and her husband; that since the remarriage of the defendant to the plaintiff's mother, all visitations between Gregory and the defendant have been denied. The trial court also found that the Aures had failed to comply

with the provisions of the property settlement agreement approved by the court, authorizing the defendant to claim Gregory as an income tax exemption, and have claimed the child themselves.

The trial court was primarily concerned, however, with the failure of the plaintiff to adjust to the marriage of her mother and the defendant, and feared that the plaintiff's attitude might affect the natural feelings of the child toward his father. The court therefore resolved to modify the divorce decree by reversing the effect of the custody provisions, granting custody of the child to the defendant, but allowing visitation with the mother on the terms of the original award. The decision of the trial court and its reasoning are more fully reflected in its oral decision which, in pertinent part, is as follows:

> I am satisfied that for the welfare of the boy that I should grant the petition of the father and award him the custody of the youngster now, and I will do that.
>
> . . . .
>
> I will make this further observation, that I suggest that a year from now that another look be taken at this thing on the petition of the mother, if she wants to so petition to regain custody, and that at that time the court review the entire situation to see whether the mother has become adjusted to this situation in the father's family; whether she has become willing to accept it, whether her attitude is such that she can cope with it intelligently and tactfully and helpfully.
>
> I suggest that whatever department hears it at that time take a close look at how the mother has reacted during the year, and how she has cooperated in carrying out the decree that I am presently announcing, how she cooperates with the father in exercising visitation rights, and in general, how she behaves in reference to this picture throughout the year. I hope her attitude will greatly improve.
>
> Now, during this year I am going to just reverse the situation. The mother may have the same visitation privileges that the father was to have during the last several years; namely, every other week-end and two weeks during the summer time. As a matter of fact, I am going to

provide that the boy spend two weeks with his mother yet this summer, and he may visit with her for the two weeks from Saturday, August 20th, to Saturday, September 3rd.

The trial court in its oral decision denying the motion for reconsideration stated:

And I was satisfied that that was the case here; that in view of the attitude of the mother and the things I have just explained, that it would be damaging to the child to allow him to remain in that atmosphere, and that for his own sake, his own interests, he would be better off for at least a while with the father.

I did suggest that a year from now that the parties take another look at it. Perhaps the child can go back to the mother if her attitude has improved, and if she is better able to handle the situation, and if she feels differently about visitations. But I would want to be convinced, were I the judge handling it, that her mental attitude was such that she would be willing to share the child with the father, a thing which now is not possible for her.

The plaintiff appeals.

The plaintiff's assignments of error are in essence that the trial court manifestly abused its discretion in modifying the custody provisions of the decree.

The plaintiff argues that her denial of the defendant's visitation rights under the circumstances was the result of her natural reaction to his marriage, and should have been dealt with by the trial court in taking appropriate action for the enforcement of its order, other than the removal of the child from her custody; that this constituted a visitation of the punishment for contempt upon the child. Plaintiff urges this was in violation of the established rule in this state; that punishment of a parent for contempt may not be visited upon the child in custody cases; and that custody of the child is not to be used as a reward or punishment for the conduct of the parents. *Shaffer v. Shaffer,* 61 Wn.2d 699, 379 P.2d 995 (1963); *Malfait v. Malfait,* 54 Wn.2d 413, 341 P.2d 154 (1959); *Annest v. Annest,* 49 Wn.2d 62, 298 P.2d 483 (1956); *Norman v. Norman,* 27 Wn.2d 25, 176 P.2d 349 (1947).

The defendant contends, however, that the court's action was for the welfare of the child; that it specifically ordered the change of custody for this reason; and that such order involved no element of punishment for contempt.

■■ Analyzing this record, there can be no doubt that the real cause for the plaintiff's violation of the visitation provision in the divorce decree was the marriage of the defendant to the plaintiff's mother. The trial court properly did not regard this unusual, if not bizarre, situation as justifying a refusal of visitation rights to the defendant. It may well be that the trial court moved too drastically in depriving the plaintiff of the custody of the child because of her failure to allow the defendant his visitation rights. However, a year has passed since that change of custody and, as indicated by the trial court, the attitude of the mother could change sufficiently to justify further consideration of its modification order. The trial court suggested that there should be "another look" at the situation at the end of a year. We are satisfied that the best disposition that we can make of this matter at this time is to follow that suggestion and remand this matter back to the superior court for "another look" with instructions to conduct a hearing and enter such a judgment as to the custody of the child as the present and foreseeable future best interests of the child warrant. We need not again cite the many cases which indicate that such a hearing is not to be a tug-of-war between contending parents but for the purpose of doing that which seems to be for the best interests of the child under all the circumstances.

The case is remanded for further hearing consistent with the views expressed in this opinion. Costs will abide the final determination of the cause.

FINLEY, C. J., HILL and NEILL, JJ., and BARNETT, J. Pro Tem., concur.