[No. 25584-7-II.    Division Two.    May 18, 2001.]

*In the Matter of the Parentage of* ASHLEY MARIE SCHROEDER.
DOUGLAS JAMES BRESTER, *Appellant,* v. TRACY SCHROEDER
BOLLENBACHER, *Respondent.*

344

*Patricia D. Rourke* (of *McCarthy Casseaux & Rourke*), for appellant.

*Tracy S. Bollenbacher*, pro se.

*Stephan D. Downing*, for minor.

QUINN-BRINTNALL, J. — Douglas Brester appeals the denial of his motion to modify a parenting plan to grant him custody of his now 12-year-old daughter, Ashley. Douglas based his motion below on the ground that the child's mother, Tracy Bollenbacher, had been found in contempt at least twice within the preceding three years for interfering with his visitation rights. The court again found Tracy in contempt, and awarded Douglas $2,000 in attorney fees and no costs, but declined to modify the plan and award custody

to Douglas. In this appeal Douglas claims the court erred by refusing to award him custody, by granting him only $2,000 in attorney fees and no costs, and by giving the guardian ad litem (GAL) authority to modify the parenting plan without court review. Because there is no evidence that a change of custody is in Ashley's best interest, we hold that the court did not abuse its discretion when it denied the motion for change of custody. We find, however, that the court erred when it purported to grant the GAL unilateral authority to modify the parenting plan and failed to award Douglas all court costs and the statutory civil penalty. Therefore, we remand.

## FACTS

Douglas Brester, the appellant, and Tracy Bollenbacher,[1] the respondent, dated for four months in 1987. According to Tracy, the two broke up because they could not get along. When she learned she was pregnant and told Douglas, he wanted nothing to do with her. Their daughter, Ashley, was born on June 29, 1988. According to Douglas, he knew nothing about his daughter until the paternity action was filed in 1988. By order dated November 7, 1989, Douglas was found to be Ashley's father. Between November 7, 1989, and December 29, 1991, Douglas, who lives with his parents, consistently exercised his visitation rights with Ashley.

In late 1991 to early 1992, Douglas's parents made two referrals to Child Protective Services and accused Tracy of letting someone molest Ashley. Tracy believed Douglas had molested Ashley. Because Ashley, then about four years old, was very angry and acting out, she was taken to a counselor, Debbie Kylie Gibson. Despite the fact that no clear evidence of molestation was found, Tracy continued to believe that Douglas had molested Ashley and refused to allow visitation. Tracy also believed that the real parties

---

[1] The first names of the parties are used for the ease and clarity of the reader. We mean no disrespect.

interested in visitation with Ashley were Douglas's parents[2] and that Douglas was frequently absent during Ashley's visits.

In 1996, Douglas filed a petition to enforce his visitation rights. The GAL report noted that as of August 1996, Ashley did not actually know Douglas. After two years of wrangling, during which time Tracy resisted Douglas's visitation rights, a court entered a parenting plan in November 1998, granting custody of Ashley to Tracy and allowing Douglas generous visitation rights. Neither party appealed this order, but the court found Tracy in contempt for violating it less than one month later.

Tracy, Douglas, and their parents continued to fight over Ashley. Ashley became increasingly difficult and effective at manipulating her parents.[3] In April 1999, Douglas moved for Tracy to be held in contempt a second time and moved to modify the parenting plan based on Tracy's attempts to interfere with his relationship with Ashley. At the contempt and modification hearing held on May 27, 1999, Douglas offered affidavits detailing Tracy's actions. He also offered evidence of the attorney fees he had incurred trying to enforce his visitation rights. The GAL, who had been involved in this case for four years, was the only witness. He reported that a change of custody would not be in Ashley's best interests.[4] He also stated that he had been

---

[2] The GAL reports and statements from the court are replete with references to "Mr. Brester and his parents' " ability to provide care. *See, e.g.,* Clerk's Papers at 30-31.

[3] At the hearing before the commissioner, the GAL stated, "This is perhaps one of the more extreme cases where a child is in control of both of these parents and she's manipulating both of them." Clerk's Papers at 167.

[4] At the hearing, the GAL told the court:

I'm not going to stand here and recommend that the primary care of this child change. I think to do that, while it may satisfy Mr. Brester and he may feel to some extent he's in control then, and Ashley won't—or Tracy Bollenbecher [sic] will not be able to manipulate this anymore—I'm not sure it's all Tracy Bollenbecher [sic]. I think a large part of this happens to be this child.

. . . .

I cannot stand here and say that we're going to solve the issues with these

working on a visitation schedule calendar but had not been able to complete it because he did not have Ashley's school calendar for the next school year.

The commissioner took the matter under advisement. At the insistence of Douglas's attorney, the court entered a letter ruling on August 12, 1999. On November 18, 1999, the court entered a formal order without benefit of a transcript of its earlier oral ruling. The commissioner's formal order differed somewhat from its earlier oral announcements but still refused to modify the parenting plan or find that a change in custody would be in Ashley's best interest. The commissioner found Tracy in contempt and ordered her to pay Douglas $2,000 in attorney fees. He granted Douglas 13 additional days of visitation to account for the days Tracy had prevented Ashley from visiting Douglas and his family.

The superior court, on review of this order, apparently confirmed the commissioner's ruling in all aspects.[5] It further ruled that if Tracy violated the parenting plan again, she would be ordered to jail for 30 days. Finally, the court ruled that the GAL's visitation calendar "supercedes the parenting plan." Clerk's Papers at 182. From this order,

---

parents and with this child transferring primary care. I don't believe it will happen. It will make things worse unless first there is intervention by a therapist.

. . . I'm not the one to do the intervention. That needs to take place. I can't make Tracy and Doug be responsible parents. I can't make them do the right thing with regard to Ashley.

Clerk's Papers at 163-65. The court then asked, "It's your opinion that [Ashley] then takes advantage of the facts and the hard feelings between these two people and then just kind of sets these people up for a fall. Is that what she's doing?" Clerk's Papers at 165. The GAL responded, "Well, I think to some extent, yes. . . . I think if the Court were to move Ashley at this point, [Douglas] will have lost her emotionally or psychologically forever. It doesn't matter whether they live in the same house or not." Clerk's Papers at 165, 171.

[5] The order has a slash across a portion of the proposed order. It is unclear whether the immediate commitment to jail or the 30 days and the immediate commitment to jail have been removed. The written portion states that the lower courts' ruling is affirmed in all respects, but given the slash, that statement is not supported by the record. Douglas has not provided a transcript of the superior court proceedings.

Douglas appealed. Tracy has not participated in this appeal.

## ANALYSIS

## Modification of Parenting Plan

Douglas contends the trial court abused its discretion when it refused to modify the parenting plan and award custody of Ashley to Douglas.

■ In Washington, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09-.002. While courts also should encourage the involvement of both parents, this is a secondary goal and courts should never sacrifice the best interests of the child to allow both parents to be involved. *In re Marriage of Littlefield*, 133 Wn.2d 39, 52-53, 940 P.2d 1362 (1997).

■ The appellate court reviews the trial court's rulings on residential provisions in a parenting plan for an abuse of discretion. *Littlefield*, 133 Wn.2d at 46. A trial court abuses its discretion only if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Littlefield*, 133 Wn.2d at 46-47. A decision is manifestly unreasonable if, based on the facts and the applicable legal standard, the decision is outside the range of acceptable choices. *Littlefield*, 133 Wn.2d at 47. A decision is based on untenable grounds if the findings are not supported by the record. *Littlefield*, 133 Wn.2d at 47. Finally, a decision is based on untenable reasons if the court applies the wrong legal standard or the facts do not establish the legal requirements of the correct standard. *Littlefield*, 133 Wn.2d at 47. Because of the trial court's unique opportunity to observe the parties, the appellate court should be "extremely reluctant to disturb child placement dispositions." *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by Littlefield*, 133 Wn.2d at 57.

■ Once a court enters a parenting plan and neither party appeals it, the plan can be modified only pursuant to RCW 26.09.260. *Schuster v. Schuster*, 90 Wn.2d 626, 629, 585 P.2d 130 (1978). That statute allows for a modification only if, based on "facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, . . . a substantial change has occurred in the circumstances of the child or the nonmoving party and . . . the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1). There is a strong presumption against modification because changes in residences are highly disruptive to children. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Thus, it is the moving party's burden to prove a modification is appropriate. *See George v. Helliar*, 62 Wn. App. 378, 383-84, 814 P.2d 238 (1991).

■ A substantial change has occurred when "[t]he court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan." RCW 26.09.260(2)(d). Thus, when one parent prevents another from having contact with a child in violation of the parenting plan, a court may justify a change of custody based on that action. *See, e.g., McDole*, 122 Wn.2d at 610-11; *In re Marriage of Velickoff*, 95 Wn. App. 346, 357-58, 968 P.2d 20 (1998). This type of violation is contrary to the policy of encouraging contact with both parents. *Velickoff*, 95 Wn. App. at 357 (citing RCW 26-.09.002).

Here, Douglas asserts that based on Tracy's continued campaign to prevent his right to visitation, in violation of the parenting plan and in contempt of the court's orders, the trial court was required to modify the parenting plan and grant him custody of Ashley.

Before the 1989 amendments to RCW 26.09.260,[6] case

---

[6] *See* Laws of 1989, ch. 318, § 3 (codified at RCW 26.09.260(2)(d)).

law was clear that this argument had no merit. A court could not order a change of custody merely because the custodial parent was in contempt of a court order; rather, there needed to be a finding that a change of custody was in the best interests of the child. *Schuster*, 90 Wn.2d at 630; *Shaffer v. Shaffer*, 61 Wn.2d 699, 702-03, 379 P.2d 995 (1963); *In re Marriage of Murphy*, 48 Wn. App. 196, 200, 737 P.2d 1319 (1987). "It would be inappropriate to sacrifice the best interests of the child based on the misconduct of one parent[.]" *Murphy*, 48 Wn. App. at 200. For example, in *Shaffer*, the father documented the mother's repeated violations of the custody order as she attempted to prevent his visitation rights. The Supreme Court agreed that violating the plan might be evidence that the mother was not acting in the child's best interests, but in that case the record was barren of any evidence she was acting in any way that was harmful to the child. Thus, it reversed the trial court's order granting the father custody and held that the "wilful violation of a court decree cannot, per se, justify a change of custody." *Shaffer*, 61 Wn.2d at 703.

After the 1989 amendments to the custody modification statute, parenting plan violations remain a factor that can justify the change of custody, *see Velickoff*, 95 Wn. App. at 354, but absent a finding that modification is in the best interests of a child, the mere violation of the parenting plan cannot, per se, require a change in custody when such change is contrary to the best interests of the child. The amendment furthers the legislative policy to allow both parents to have contact with the child, *see* RCW 26.09.002, and was part of a larger act to protect against custodial interference, *see* LAWS OF 1989, ch. 318 (codified in varied sections of Title 26 RCW), but nothing in the act affects section one of RCW 26.09.260, which dictates that the best interests of the child control. Parental involvement remains a secondary objective to the court's duty to decide parenting issues with the best interests of the child in mind. *See Littlefield*, 133 Wn.2d at 52-53.

Here, the court did not find that giving Douglas custody

would be in Ashley's best interests, despite Tracy's continued contemptuous conduct. The lack of such a finding suggests that the trial court found that a modification would not be in Ashley's best interest. *See George*, 62 Wn. App. at 383-84 (holding that the absence of an essential finding suggests a negative finding against the party seeking to modify the parenting plan). Because Douglas had the burden of proving a modification of custody was in Ashley's best interest, the absence of this finding is fatal to Douglas's claim. Moreover, the only witness at the modification hearing, the GAL, opined that it would not be Ashley's best interest for Douglas to have custody.[7] Rather, the GAL reported that transferring custody could "make things worse." Clerk's Papers at 165.

Despite Douglas's claims, the holdings in *McDole* and *Velickoff* are not contrary to our position. Although the appellate courts in both cases upheld the trial courts' rulings transferring custody because of one parent's attempt to prevent the other from visitation, the trial courts in both cases found that the current custody arrangements were detrimental to the children's best interests, a fact both appellate courts emphasized. *See McDole*, 122 Wn.2d at 611; *Velickoff*, 95 Wn. App. at 355-56. As noted, there is no such finding in this case. The trial court did not abuse its discretion when it refused to modify the parenting plan and grant custody of Ashley to Douglas.

Modification of the Parenting Plan by the GAL

Douglas contends the trial court erred when it gave the GAL unilateral authority to modify the visitation conditions in the parenting plan.

■ Any modification of a parenting plan, "no matter how slight," requires the court to conduct an independent inquiry. *In re Parentage of Smith-Bartlett*, 95 Wn. App. 633, 640, 976 P.2d 173 (1999) (holding the trial court erred by granting an arbitrator authority to revise the parenting

---

[7] *See supra* note 4.

plan without allowing de novo review) (citing RCW 26.09.260).[8]

■ Here, the trial court ruled that "[the GAL's] calendar [for visitation] supercedes the parenting plan." Clerk's Papers at 182. It did not provide that it would review the GAL's actions. This was a modification of the plan, and it was error for the court to give this authority to the GAL without providing for court review.

### Attorney Fees and Costs on Order of Contempt

Douglas asserts that the trial court erred when it ordered Tracy to pay only $2,000 in attorney fees and no costs after it found Tracy in contempt for the second time.

■ Under RCW 26.09.160(3), when a court finds a parent in contempt for a second time, the court must order the contemnor to pay reasonable attorney fees and all court costs:

[T]he court shall order:

. . . .

(b) The noncomplying parent to pay, to the other parent or party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child; and

(c) The noncomplying parent to pay, to the moving party, a civil penalty of not less than two hundred fifty dollars.

The dictates in RCW 26.09.160 are mandatory; the trial court, after finding a party in contempt, must order that party to pay reasonable attorney fees and all court costs. *In re Marriage of Wolk*, 65 Wn. App. 356, 359, 828 P.2d 634 (1992). The amount of attorney fees, however, is within the trial court's discretion. *Wolk*, 65 Wn. App. at 359 n.3. Any attorney fees must relate to the costs of bringing the current contempt proceedings, not some prior proceeding.

---

[8] In contrast, the trial court can delegate interpretation of the parenting plan, *see Smith-Bartlett*, 95 Wn. App. at 640, or accept an expert's recommendations for modifications. *See George*, 62 Wn. App. at 385.

*Edwards v. Edwards*, 83 Wn. App. 715, 725, 924 P.2d 44, 932 P.2d 171 (1996) (contempt under RCW 7.21.030(3)).

Here, Tracy has been held in contempt two times.[9] Thus, at minimum, the trial court had to order Tracy to pay Douglas's reasonable attorney fees, all costs, and a civil penalty of at least $250. The trial court found that reasonable attorney fees were $2,000. But it failed to order payment of all court costs and the minimum statutory civil penalty of $250. The records Douglas submitted prior to the May 27, 1999 contempt hearing documenting his attorney fees show they totaled $4,363.24. At the hearing, his attorney averred Douglas had spent over $6,000 in fees for her services. But this evidence does not document whether these fees were "incurred as a result of the noncompliance." *See* RCW 26.09.160(3)(b). Some of the fees were generated before the parenting plan was entered and before the first contempt was entered. The court may award only those fees incurred because of the current contempt charges. *See Edwards*, 83 Wn. App. at 725. Moreover, the statute only requires the court to impose reasonable attorney fees. It was within the court's discretion to find that $2,000 was reasonable.[10] But the court should have ordered Tracy to pay all court costs and a civil penalty of not less than $250.

Douglas also requests attorney fees on appeal. Because the trial court should have awarded him all court costs and a civil penalty of not less than $250 relating to the contempt, Douglas is entitled to the attorney fees he incurred on this appeal for pursuing the contempt claim only insofar as he prevailed in recovering court costs and the minimum statutory civil penalty.[11] He is not entitled to recover fees for the appeal as to the change of custody,[12] the

---

[9] The original contempt order is not part of the record, but it is evidenced in Douglas's May 25, 1999, declaration and in the second contempt order.

[10] Douglas notes that he paid his former attorney approximately $10,000. But he incurred these fees before the parenting plan was entered and thus they were not related to the contempt proceedings.

[11] Upon compliance with RAP 18.1.

[12] We note that there is no evidence in the record before us that a change in

court's determination that $2,000 was a reasonable amount for his fees, and the improper delegation of authority to the GAL.

We remand to the trial court for computation of court costs, imposition of a civil penalty of not less than $250, and deletion of that portion of the order providing that the GAL's calendar supersedes the parenting plan.

ARMSTRONG, C.J., and BRIDGEWATER, J., concur.

primary custody to Douglas is in Ashley's best interest. Rather, Douglas argued below that because Tracy was in contempt of the parenting plan by not facilitating 13 days of disputed visitation that the contempt should be punishable by loss of primary custody. To the extent that earlier GAL reports and the court's statements on the record indicate that loss of custody was an available punishment for contempt notwithstanding the best interests of the child in question, that is not, and cannot be the law.