248 P.3d 1101 (2011)
In re the MARRIAGE OF Kristine J. COY, Respondent, and
Mark A. Coy, Appellant.
No. 39690-4-II.
Court of Appeals of Washington, Division 2.
March 22, 2011.
*1102 Talis Merle Abolins, Campell Dille Barnett, Puyallup, WA, for Appellant.
John Arthur Miller, Miller Quinlan and Auter, Fircrest, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Mark and Kristine Coy dispute the appropriate trial court standard of review of a decision that Kristine[1] made regarding a parenting plan dispute. Under a CR 2A agreement, Kristine purportedly received complete discretionary authority to determine if Mark complied with agreed standards and could receive additional residential time with their daughter, A.C. Kristine denied Mark additional residential time, and Mark appealed her decision to an arbitrator and *1103 then to the Pierce County Superior Court, which both ruled in Kristine's favor. Because the CR 2A agreement usurps the trial court's statutory duties and authority to consider modifications to a parenting plan based on the best interests of the child, we hold that the parts of the CR 2A agreement that purport to allow Kristine to unilaterally grant or deny modifications to the parenting plan are unenforceable. Any future changes to the parenting plan must be presented to the trial court under the parenting plan modification statute, RCW 26.09.260. The trial court also improperly awarded Kristine attorney fees. We reverse and remand.

FACTS
¶ 2 Mark and Kristine were married in October 1996; had a daughter, A.C., in 2000; and separated in February 2002. The trial court entered final dissolution orders, including a permanent parenting plan, on July 19, 2002. The parenting plan designated Kristine as A.C.'s primary residential parent; established joint decision-making authority for major parenting decisions; and granted Mark a minimum of one weekday and alternate weekend residential time with A.C. throughout the year, certain holidays, and "additional time" in the summer. Clerk's Papers (CP) at 13.
¶ 3 From February 2005 through August 2007, Mark continually sought more residential and visitation time with A.C. He filed multiple parenting plan modification motions that the trial court denied. During this time, Mark and Kristine also attended two mediations wherein they agreed to minor modifications to the parenting plan's residential visitation schedule. The trial court ultimately approved and memorialized these changes in court orders.[2] One other change to the parenting plan was a shift in the dispute resolution process for future conflicts over the plan from "counseling" to "[b]inding arbitration." Compare CP at 17 with CP at 56. The trial court made this change in August 2007, when entering a modified parenting plan order. This modified parenting plan expressly stated that the parties' retained the right to have the dispute resolution process reviewed by the superior court. The August 2007 parenting plan is the most recent parenting plan that the trial court entered; it retained Kristine as A.C.'s primary residential parent and continued to assign joint decision-making authority for major decisions on A.C.'s upbringing.
¶ 4 In early 2008, Kristine moved from Tacoma to University Place, Washington, a move that brought her closer to Mark's residence. In March 2008, Mark filed an objection to Kristine's relocation of A.C. and filed a proposed modified parenting plan in which he sought primary residential parenting status. The trial court set a hearing for August 28, 2008, to consider issues related to the relocation.
¶ 5 On August 28, a pro tern judge held a mediation with the parties and their attorneys. This mediation resulted in a handwritten CR 2A agreement signed by the parties and their attorneys, wherein they agreed to change the August 2007 parenting plan by (1) increasing Mark's weekend residential time to include time through Monday morning, instead of ending it on Sunday evening; (2) changing Mark's specified weekly Wednesday evening residential time to Thursday evening; and (3) adding nonresidential visitation time for Mark from the end of the school day to 5:00 PM on Wednesdays.
¶ 6 In addition, the CR 2A agreement added requirements. If Mark complied with these additional requirements over the next six to twelve months, he could receive additional weekly overnight residential time. The parties assigned Kristine complete discretionary authority to determine whether Mark complied with the new requirements and to implement any additional residential schedule rights, but the CR 2A agreement provided that Mark could appeal Kristine's decision to binding arbitration. The parties also stated in the agreement that "neither party will bring further proceedings in court *1104 except as provided in this agreement." CP at 144. Kristine filed a copy of the signed CR 2A agreement with the trial court in November 2008.
¶ 7 Several months later, because Kristine felt that Mark did not fulfill the requirements for additional residential time outlined in the CR 2A agreement, she denied Mark additional residential visits. Mark disagreed with her decision and exercised his rights under the CR 2A agreement to have an arbitrator review Kristine's decision.
¶ 8 In March 2009, Rebecca Reeder presided over the arbitration and prepared findings of fact and conclusions of law to file with the trial court. Reeder concluded that the CR 2A agreement allowed Kristine to determine Mark's compliance with the agreed standards at her discretion and that "the court should make provisions for a future parenting plan for the parties [sic] minor children of the marriage consistent with the express agreement contained in the Parenting Plan and subsequent CR 2A agreement." 2 CP at 218. Reeder decided that Mark had not complied with the requirements of the CR 2A agreement and that Kristine's decision to deny Mark more residential time should be honored.
¶ 9 When Reeder prepared final trial court orders for submission, Mark and Kristine disputed whether an arbitrator had the authority to enter findings of fact and conclusions of law or if an arbitrator could only enter a ruling. Mark asserted that the distinction impacts the standard of review that the trial court uses to review the arbitrator's decisions. Ultimately, in mid-2009, the trial court (1) denied Mark's request to review de novo the arbitrator's decisions; and (2) adopted the arbitrator's findings, conclusions, and ruling, in part because the parties had used "binding arbitration of their own volition." CP at 204. Subsequently, Kristine sought, and the trial court awarded her, $2,408 in attorney fees. The trial court based attorney fees on (1) the parties' financial resources, under RCW 26.09.140; and (2) Mark's use or frustration of the dispute resolution process without good reason, under RCW 26.09.184(4)(d).[3] Mark timely appeals.[4]

ANALYSIS
¶ 10 The parties dispute the appropriate standard of review that the trial court should use to review the issues in this case. Mark argues that under the parenting plan, statutory provisions, and case law, he has a right to a de novo review of the results of a parenting plan dispute resolution process. Kristine contends that the trial court should review the arbitrator's findings of fact and conclusions of law for substantial evidence to determine if she (Kristine) abused her discretion when denying Mark additional residential time.
¶ 11 The parties' arguments presuppose the validity of the CR 2A agreement provisions granting Kristine authority to, in effect, grant or deny modification to the parenting plan's residential schedule at her discretion. But parties cannot stipulate to a process that eliminates the trial court's consideration of parenting plan modifications under the best interests of the child standard. Accordingly, we strike the CR 2A agreement provisions that relate to Kristine's purported ability to modify the parenting plan without a trial court inquiry or review because they are unenforceable.
¶ 12 CR 2A provides parties with an opportunity to enter into stipulated agreements that can be enforced if they are "made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed *1105 by the attorneys denying the same." The purpose of CR 2A is to "avoid ... disputes and to give certainty and finality to settlements and compromises, if they are made." Eddleman v. McGhan, 45 Wash.2d 430, 432, 275 P.2d 729 (1954). But parties cannot enter into stipulations on impermissible subject matters, including the jurisdiction of a court. Barnett v. Hicks, 119 Wash.2d 151, 161, 829 P.2d 1087 (1992); Gallagher v. Sidhu, 126 Wash.App. 913, 920, 109 P.3d 840 (2005).
¶ 13 After a trial court enters a final parenting plan, and neither party appeals it, the plan can be modified only under RCW 26.09.260. Schuster v. Schuster, 90 Wash.2d 626, 628-29, 585 P.2d 130 (1978); In re Parentage of Schroeder, 106 Wash.App. 343, 350, 22 P.3d 1280 (2001). This statute explicitly requires that a trial court consider and make any modifications to a parenting plan based on what is in the best interests of the child. RCW 26.09.260(1). A trial court cannot delegate its authority to modify a parenting plan. See Kirshenbaum v. Kirshenbaum, 84 Wash.App. 798, 807, 929 P.2d 1204 (1997).[5] Modifications are any increases or reductions to the rights originally granted to a party. Rivard v. Rivard, 75 Wash.2d 415, 418, 451 P.2d 677 (1969). Any modification, no matter how slight, requires an independent inquiry by the trial court. Schroeder, 106 Wash.App. at 352, 22 P.3d 1280; In re Parentage of Smith-Bartlett, 95 Wash.App. 633, 640, 976 P.2d 173 (1999).
¶ 14 Here, Mark and Kristine entered into a CR 2A agreement wherein they purportedly established a process for modifying the parenting plan without complying with a controlling statute, RCW 26.09.260. They made this agreement "to avoid the need for the parties to continue to go back to Court every time a dispute arose" and "to lessen constant court litigation." Br. of Resp't at 5, 7. But the parties cannot deprive the trial court of its jurisdiction and statutory responsibilities to consider changes to a parenting plan and review whether such changes are in the best interests of the child. See Barnett, 119 Wash.2d at 161, 829 P.2d 1087; Gallagher, 126 Wash.App. at 920, 109 P.3d 840; see also RCW 26.09.070(3) (a separation contract, "except for those terms providing for a parenting plan for their children, shall be binding upon the court unless it finds ... that the separation contract was unfair at the time of its execution") (emphasis added); see also In re Marriage of King, 162 Wash.2d 378, 416, 174 P.3d 659 (2007) (Madsen, J., dissenting) ("Even if the divorcing parents agree as to every aspect of their dissolution, their stipulations must be approved and entered by a court to have effect, and a court must agree that a parenting plan jointly agreed to by the parents is in the best interests of the child.") (emphasis added). The appropriate interests to weigh when evaluating possible changes to a parenting plan are the interests of the child and not the inconvenience or expense of litigation imposed on the parents or the court.
¶ 15 The statutes Kristine cites for the trial court's ability to establish her decision-making authority in a parenting plan do not apply. RCW 26.09.184(5) and RCW 26.09.187(2) relate to a trial court's specification in the parenting plan of the parent who makes decisions regarding the child's education, health care, and religious upbringingnot decisions about whether the other parent can spend more or less time with the child.
¶ 16 Kristine also argues that because she did not extend Mark's residential rights, there was no modification to the parenting plan. She suggests that her decision to deny Mark extra residential time was actually an interpretation of the existing parenting plan that the trial court could delegate to her. But even assuming without deciding that Kristine is correct, she did not have authority to interpret the parenting plan. The trial court did not delegate to either of the parties an independent authority to settle disputes about interpretations of the parenting plan. Moreover, we note that Kristine's decision did not interpret the terms of a court-approved, modified parenting plan but, rather, *1106 evaluated Mark's compliance with terms contained in the parties' CR 2A agreement.
¶ 17 Finally, to the extent Kristine argues it is appropriate for one parent to be an arbitrator for disputes over the terms of a parenting plan, we soundly reject this practice. A parent of a child cannot make an independent, objective judgment about what is in the best interests of that child, especially with regard to an ex-spouse's parental rights regarding that child.[6] The inherent conflict of interest is obvious and warrants no further discussion.
¶ 18 Accordingly, those parts of the CR 2A agreement that relate to Kristine's purported ability to modify the parenting plan without a trial court inquiry or review are unenforceable.[7] Our decision invalidating parts of the CR 2A agreement renders analysis of the parties' standard of review arguments unnecessary. The only issues that remain concern attorney fees.

ATTORNEY FEES

A. Fees Awarded by the Trial Court
¶ 19 Mark alleges that the trial court abused its discretion by awarding Kristine $2,408 in attorney fees and costs. The trial court awarded Kristine fees based on RCW 26.09.140 and RCW 26.09.184(4)(d). Because neither ground supports attorney fees and costs, we reverse the awarded fees.
¶ 20 We review statutory attorney fee award decisions for an abuse of discretion. In re Marriage of Nelson, 62 Wash. App. 515, 521, 814 P.2d 1208 (1991). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997).
¶ 21 RCW 26.09.140 allows the trial court to award fees and costs "after considering the financial resources of both parties." Here, there is nothing in the record indicating that the trial court knew of evaluated Mark's and Kristine's financial situations. In fact, Mark's declaration to the trial court specifically pointed out that "[n]either party submitted financial information for the court's consideration" in awarding fees and costs. CP at 230. The trial court's order awarding fees and costs listing the documents it considered does not include any financial records, but it does acknowledge a review of Mark's aforementioned declaration citing this deficiency. Accordingly, RCW 26.09.140 does not support attorney fees and costs in this case.
*1107 ¶ 22 RCW 26.09.184(4)(d) allows a trial court to award attorney fees if it finds "that a parent has used or frustrated the dispute resolution process without good reason." Here, the trial court's only explanation for awarding fees was an oral ruling finding that Mark frustrated the dispute resolution process without good reason "because it's post arbitration that the parties agreed would be binding." Report of Proceedings (Aug. 7, 2009) at 7. This reasoning suggests that the trial court awarded attorney fees solely because Mark sought the trial court's review of the dispute resolution process. But Mark had a statutory right to a superior court review of the dispute resolution process. RCW 26.09.184(4)(e). Accordingly, Mark did not improperly frustrate or misuse the dispute resolution process by seeking his right to superior court review. Seeing no authority for the trial court to have awarded Kristine fees in this case, we reverse the attorney fees award.

B. FEES ON APPEAL
¶ 23 Mark did not request attorney fees on appeal. Kristine requested appellate attorney fees but did not include a separate section in her brief devoted to her request as RAP 18.1(b) requires. This requirement is mandatory. Phillips Bldg. Co. v. An, 81 Wash.App. 696, 705, 915 P.2d 1146 (1996). The rule requires more than a bald request for attorney fees on appeal. Thweatt v. Hommel, 67 Wash.App. 135, 148, 834 P.2d 1058, review denied, 120 Wash.2d 1016, 844 P.2d 436 (1992). Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs. Austin v. U.S. Bank of Wash., 73 Wash.App. 293, 313, 869 P.2d 404, review denied, 124 Wash.2d 1015, 880 P.2d 1005 (1994). Moreover, Kristine is not the prevailing party on appeal. Accordingly, we deny Kristine's appellate attorney fees request.
¶ 24 In accordance with this opinion, we hold that the provisions of CR 2A agreements that usurp a trial court's statutory duty to review modifications to a parenting plan are unenforceable. We strike the offending provisions of Mark and Kristine's CR 2A agreement, reverse the trial court's attorney fees award to Kristine, and remand the case for further proceedings consistent with this opinion. Any future requests for changes to the parenting plan should be pursued in accordance with RCW 26.09.260.
We concur: PENOYAR, C.J., and ARMSTRONG, J.
NOTES
[1] We use the parties' first names for clarity to the reader and mean no disrespect.
[2] Several of Mark's motions, and some of the post-mediation court orders, are not in the record on review, but they are discussed in an arbitrator's findings that the trial court adopted. These arbitrator's findings are unchallenged verities on appeal. In re Marriage of Vander Veen, 62 Wash.App. 861, 865, 815 P.2d 843 (1991).
[3] We cite to the current version of all statutes in this opinion since any amendments in recent years are not substantively relevant to this appeal.
[4] The CR 2A agreement in this case addressed several other issues related to the parenting plan that are not relevant to this appeal. Specifically, the CR 2A agreement addressed the terms of A.C.'s health insurance coverage. An October 9, 2009 transcript in the record suggests that the parties litigated a dispute on this issue with their dispute over Kristine's decision denying Mark additional residential time. There are no orders or rulings on this issue included in the notice of appeal. Accordingly, there are no issues in this appeal related to disputes on the CR 2A agreement that do not relate to potential changes to Mark's residential time in the parenting plan.
[5] In contrast, a trial court can delegate its responsibility of interpreting the parenting plan, as long as the parties retain a right of review by the trial court. Schroeder, 106 Wash.App. at 353 n. 8, 22 P.3d 1280; Smith-Bartlett, 95 Wash.App. at 640, 976 P.2d 173.
[6] Even if Kristine did somehow have authority to modify the parenting plan, any decisions would be subject to final de novo review by the trial court. See Smith-Bartlett, 95 Wash.App. at 640-42, 976 P.2d 173 (holding that the trial court erred by granting an arbitrator authority to modify a parenting plan without allowing de novo review of the modifications).
[7] Other parts of the CR 2A agreement also purported to modify terms of the parenting plan. For example, the CR 2A agreement changed Mark's weekly residential overnight from Wednesdays to Thursdays and allowed Mark additional Sunday overnight time. The record does not indicate whether the trial court ever approved these modifications in a new modified parenting plan order. These modifications to the parenting plan were not challenged in this appeal. Accordingly, we leave intact these agreed-to modifications of the parenting plan for the trial court to consider, and approve or reject, on remand if it has not already done so.

The parties' use of CR 2A to attempt to modify a parenting plan highlights an interesting facet of the interplay of CR 2A stipulations, alternative dispute resolution, and parenting plan modifications. Parties can use stipulations and alternative dispute resolution to create proposed changes to a parenting plan for a trial court to consider. But the trial court must review the parties' proposed changes under the best interests of the child standard and approve or reject them. RCW 26.09.260(1); Schroeder, 106 Wash.App. at 352, 22 P.3d 1280; Smith-Bartlett, 95 Wash.App. at 640, 976 P.2d 173; see also former RCW 26.09.070(3) (a separation contract, "except for those terms providing for a parenting plan for their children, shall be binding upon the court unless it finds ... that the separation contract was unfair at the time of its execution") (emphasis added); King, 162 Wash.2d at 416, 174 P.3d 659 (Madsen, J., dissenting) ("Even if the divorcing parents agree as to every aspect of their dissolution, their stipulations must be approved and entered by a court to have effect, and a court must agree that a parenting plan jointly agreed to by the parents is in the best interests of the child.") (emphasis added). From 2005 through 2007, Mark and Kristine reached agreements in mediations to parenting plan changes, brought the proposed changes to the trial court, and the trial court reviewed the proposals and approved of the changes in final written orders.