# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

GRZEGORZ P. GOGOLOWICZ,

Appellant/Cross-Respondent,

and

MAGDALENA N. GOGOLOWICZ,

Respondent/Cross-Appellant.

DIVISION ONE

No. 80301-8-I (consol. with Nos. 80415-4-I, 80800-1-I, and 81030-8-I)

UNPUBLISHED OPINION

DWYER, J. — After a trial on relocation and modification of a parenting plan, the trial court granted the mother's request to relocate and modified the parenting plan. The trial court later held the father in contempt for violating various provisions of the parenting plan that were put in place to protect the child's emotional well-being, but did not order remedial sanctions. The father appeals, and the mother cross-appeals. We affirm. Neither the appeal nor the cross-appeal establish a basis for appellate relief.

I

Grzegorz Gogolowicz and Magdalena Gogolowicz were married on October 3, 2010. Their son, Dominic, was born on July 30, 2012. Magdalena has taken greater responsibility for performing parenting functions relating to Dominic's daily needs ever since his birth.

On March 27, 2013, Grzegorz, through counsel, filed a petition for legal separation.

On August 1, 2013, Magdalena, pro se, agreed to entry of final orders on parenting, property, and child support. The parenting plan specified that:

> In the best interest of the child, both parties intend to live within 30 minutes' drive from each other as measured by Google Maps or a similar service (without accounting for the current traffic delays). If the distance between the parties becomes larger than that, the parties agree to make appropriate major modifications to the residential schedule to reasonable [sic] provide for frequent residential time in the same average amount as defined in this agreement.

In January 2017, Magdalena sent Grzegorz an e-mail informing him that she planned to buy a house and that it was likely that any house she could afford would be more than a 30 minute drive from where Grzegorz lived in Seattle. Magdalena asserts that Grzegorz never responded to this e-mail or talked to her about her plans to move more than 30 minutes away.

On April 18, 2017, Magdalena, through counsel, sent a letter to Grzegorz notifying him of the address of the house she purchased in Maple Valley.

On May 16, 2017, Grzegorz filed (1) a motion for contempt, claiming that Magdalena had failed to provide statutory notice of her intent to relocate under RCW 26.09.440, (2) an objection to relocation, and (3) a petition seeking a major modification to the parenting plan.

On June 2, 2017, Magdalena filed a counter-petition seeking to modify the parenting plan.

A superior court commissioner found Magdalena in contempt for relocating further than 30 minutes from Grzegorz's house and failing to provide

the required statutory notice of her intent to relocate. Magdalena moved to revise the contempt order. The superior court judge declined to revise the contempt order but allowed the son's temporary relocation, finding it was likely that the relocation would be approved at trial.

Nearly 19 months passed before the modification and relocation matter reached trial. During this time, five continuances were granted by various King County Superior Court judges. In the order granting the fifth continuance, the trial court also granted Magdalena $50,000 in attorney fees to be paid by Grzegorz.

Trial finally began in December 2018 and lasted over 12 days in December 2018 and February 2019.

On April 5, 2019, the trial court entered a written order allowing Magdalena to relocate with Dominic.[1] The trial court also entered a written order regarding modification of the parenting plan.[2] The court approved major changes to the parenting plan, finding that "[t]he father has engaged in abusive use of conflict and RCW 26.09.191 restrictions are necessary to protect the child from further harm and/or the potential for further harm." The court attached the same 8-page list of 43 detailed findings to both of these orders.

The same day, the trial court entered a separate parenting plan and an order appointing a guardian ad litem for Dominic. The court attached the same 8-page list of 43 detailed findings to the parenting plan.

---

[1] Final Order and Findings on Objection about Moving with Children and Petition about Changing a Parenting/Custody Order (Relocation).

[2] Final Order and Findings on Petition to Change a Parenting Plan, Residential Schedule or Custody Order.

On July 16, 2019, after considering the parties' motions for reconsideration, the trial court entered its written amended parenting plan.

On October 29, 2019, Magdalena filed a motion for immediate restraining order and supervision of father's residential time. The court issued an immediate restraining order.

On November 18, 2019, the court held a full hearing on the restraining order. The trial court dismissed the restraining order.

That same day, November 18, 2019, Magdalena filed a motion to hold Grzegorz in contempt.

After the superior court judge denied Grzegorz's request to recuse herself from the contempt proceedings, a contempt hearing was held on December 18, 2019.

On January 21, 2020, the court issued a written order finding Grzegorz in contempt. Specifically, the trial court found that Grzegorz violated provisions of the parenting plan that were put in place to protect Dominic's well-being by (1) discussing the ongoing litigation and appeal with Dominic and telling him the residential schedule would be different after the appeal; (2) instructing Dominic to change his story to enable Grzegorz to seek to change the parenting plan; (3) using Dominic to collect information about the mother's house; (4) obstructing Dominic's therapy; and (5) discussing disclosures Dominic had made to his therapist and requiring Dominic to write an apology note for the "damages" caused by these disclosures.

Grzegorz appeals. Magdalena cross-appeals.

II

Grzegorz alleges that the trial court erred in making various fact-based discretionary decisions during the 12-day trial. Specifically, he alleges that the trial court erred by (A) admitting Dr. Wieder's supplemental parenting evaluation, (B) limiting his cross-examination of Magdalena's mother, and (C) showing bias against him.

A. The trial court did not err by admitting Dr. Wieder's supplemental parenting evaluation. Grzegorz waived his objection to the evaluation and chose not to cross-examine Dominic's therapist.

Grzegorz argues that the trial court erred by admitting Dr. Wieder's supplemental parenting evaluation because the trial court's pretrial ruling prohibited the parties from calling Dominic's therapist as a trial witness, and Dr. Wieder consulted the therapist for his evaluation. Grzegorz relies on RCW 26.09.220(3), which states that a party "may" call any person consulted for such an evaluation for cross-examination.

However, the trial court later reversed the pretrial ruling and allowed the parties to depose Dominic's counselor or call her at trial. Grzegorz's attorney then withdrew his objection to the admission of Dr. Wieder's supplemental evaluation, stating: "we objected to it on the ground that we couldn't call Dr. Maizel [the son's counselor] . . . so I guess I'll withdraw my objection because you–you gave us the authority to call her." Grzegorz also consciously waived the opportunity to cross-examine the therapist, testifying that he "made a conscious decision" not to call her in order to preserve the "therapy relationship."

Because Grzegorz withdrew his objection to the admission of Dr. Wieder's supplemental evaluation and waived his right to cross-examine the therapist, the trial court did not err by admitting the supplemental evaluation.

B. Limiting Grzegorz's cross-examination of Magdalena's mother was proper because he failed to make an offer of proof regarding her alleged criminal history.

Grzegorz argues that the trial court erred by not allowing him to further cross-examine Magdalena's mother regarding what he alleges is "her criminal history and alcoholism."  A trial court does not abuse its discretion in limiting cross-examination when an attorney fails to make an offer of proof of those matters he would expect to establish by further cross-examination.  See, e.g., State v. Ingle, 64 Wn.2d 491, 494, 392 P.2d 442 (1964).

Grzegorz failed to make an offer of proof that Magdalena's mother had been convicted of a crime.  When the trial court asked Grzegorz's attorney what convictions he thought she had, the attorney responded "I don't know for sure."  Because the attorney failed to make an offer of proof regarding what convictions he expected to establish by further cross-examination, the trial court did not abuse its discretion by limiting cross-examination.

C. Trial court did not err by quashing the subpoena Grzegorz issued to Magdalena's former attorney when the testimony sought was not relevant to the issues at trial.

Grzegorz argues that the trial court erred by quashing the subpoena and deposition of Magdalena's former attorney Anthony Gipe, who had allegedly advised Magdalena regarding how to provide notice of the relocation to

6

Grzegorz. Grzegorz asserts that Magdalena had waived her attorney-client privilege with Gipe.

On September 17, 2018, the trial court granted Magdalena's motion to quash the subpoena and strike the deposition of Gipe. The court's written order explained: "Mother was found in contempt for her failure to properly notify the father of her intent to relocate. Perhaps advice of an attorney was a post-hoc justification for this, but this issue has already been resolved. It is the reasons for the relocation that are at issue now."[3]

The trial court's stated reasoning was that *notice* of relocation, to which Gipe's testimony was allegedly relevant, was not at issue at trial; rather, the issue was Magdalena's reasons for relocation. The court's decision was based on irrelevance, not on attorney-client privilege. The trial court did not err.

D. The trial court did not show bias favoring Magdalena.

Grzegorz argues that the trial court showed bias favoring Magdalena during trial for several reasons, none of which we find persuasive.[4]

A trial court is presumed to perform its functions regularly and properly without bias or prejudice. In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). The test for determining whether a judge's impartiality might reasonably be questioned is an objective one that assumes the reasonable

---

[3] On December 11, 2018, in a hearing regarding Grzegorz's pretrial motion to authorize and order Gipe's testimony at trial, the court ruled that it would only allow Gipe to be called at trial if the mother opened the door. The request to call Gipe at trial was denied for the same reasons the subpoena was quashed.

[4] Grzegorz also argues that the trial court showed bias in its posttrial finding that he exhibited his intransigence in his motion for Judge Craighead to recuse herself after both parties agreed she could talk with Dr. Wieder in camera and she had done so. Grzegorz fails to assign error to this finding, and we treat it as a verity on appeal. See Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

person knows and understands all of the relevant facts.  Sherman v. State, 128 Wn.2d 164, 206, 905 P.2d 355 (1995).  The party claiming bias or prejudice must support the claim with evidence of the trial court's actual or potential bias.  State v. Dominguez, 81 Wn. App. 325, 328-29, 914 P.2d 141 (1996).

First, Grzegorz asserts that the trial court showed prejudice by "retaliating" against him for reporting to the police that Magdalena recorded her phone calls with him.

On the last day of trial, Grzegorz's attorney requested that the court lift the requirement for supervised residential time.  The trial court declined the request, stating in relevant part that "also the evidence that your client contacted the police makes me concerned about even more antagonism between the parties.  So until I make my findings and issue my orders, I'm not going to change it."  This issue is now moot because the requirement for supervised residential time ended when the trial court issued its modified parenting plan on April 5, 2019.  Grzegorz also cites generally to the hearing regarding his pretrial motion to exclude the recorded phone calls.  At that hearing, the court granted the motion to exclude the recorded phone calls.  This was not bias.

Second, Grzegorz alleges that the trial court was biased in not ensuring that both parties had equal time to present evidence at trial.  However, he fails to identify a single instance in which he raised this issue to the trial court.  Similarly, he fails to cite to the record to establish his claim that the trial court limited the time given to him to present evidence at trial while providing disproportionate time to Magdalena.  He establishes no claim to appellate relief.

Third, Grzegorz cites as evidence of bias the trial court's limiting of his cross-examination of Magdalena's mother.  As detailed above, the cross-examination was properly limited because there was no offer of proof.  This was not bias.

Last, Grzegorz asserts that the trial court showed bias by "telling Magdalena not to answer questions regarding the recordings she made in violation of RCW 9.73.030" and "giving hints to Magdalena's attorney about how to overcome objections."  He offers no citation to the record for these allegations; accordingly, we decline to consider them.

Grzegorz has not demonstrated that the trial court showed any bias in favor of Magdalena.

III

Grzegorz next alleges error in the trial court orders (A) allowing relocation, (B) changing the parenting plan, and (C) awarding attorney fees to Magdalena.

 A.  Relocation order.

After trial, on April 5, 2019, the court issued a 17-page order allowing Magdalena to relocate with Dominic.[5]

In addition to the findings included on the 9-page mandatory form, the trial court attached 8 additional pages of 43 specific findings.  Grzegorz fails to assign error to any of the trial court's findings of fact.  RAP 10.3(a)(4) and (g) require separate assignments of error to each of the trial court's contested factual

---

[5] See Final Order and Findings on Objection about Moving with Children and Petition about Changing a Parenting/Custody Order (Relocation).

9

findings. Because these findings have not been challenged, we treat these findings as verities on appeal. In re Estate of Lint, 135 Wn.2d 518, 532-33, 957 P.2d 755 (1998); Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407, 858 P.2d 494 (1993). We thus reject any and all arguments that the trial court erred in making findings of fact that were contrary to the evidence, or challenging any of these findings.

We will defer to the trial court's ultimate relocation ruling because the trial court had discretion to grant or deny relocation after consideration of the factors set forth in RCW 26.09.520. In re Marriage of Fahey, 164 Wn. App. 42, 56, 262 P.3d 128 (2011).

Grzegorz argues that the trial court "overruled two previous orders"—referencing prior orders holding Magdalena in contempt—when it found that Magdalena's reasons for moving were in good faith. Because the challenged orders involved completely different legal issues, his assertion is incorrect; no orders were overruled.

On June 8, 2017, the trial court found Magdalena in contempt for relocating without providing the 60-day notice required by the parenting plan. The contempt order stated that Magdalena "acted in bad faith" because she "tried to cover up her failure to comply with the relocation statute and parenting plan." On July 14, 2017, the court denied Magdalena's motion for revision of the contempt order.

After trial, in the order allowing relocation, the trial court found that Magdalena's reasons for moving were in good faith. To the extent Grzegorz is

challenging this finding, he failed to assign error to it. We treat it as a verity on appeal. See Tapper, 122 Wn.2d at 407; see also RAP 10.3(g) ("A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number.").[6]

Regardless, that the trial court had previously found that Magdalena acted in bad faith by trying to cover up her failure to abide by the relocation statute and parenting plan presents separate and unrelated legal issues from whether she had good faith reasons for requesting relocation in the relocation proceeding. The contempt issue was "bad faith" by failing to comply with a parenting plan in violation of RCW 29.09.160. In contrast, at the trial regarding relocation, the trial court was considering, among other factors, "[t]he reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation." RCW 26.09.520(5). These are separate inquiries.

The trial court did not "overrule two previous orders," as Grzegorz alleges. Rather, the orders referenced involved entirely separate and distinct legal issues.

Grzegorz also argues that the rebuttable presumption that the intended relocation of the child will be permitted in RCW 26.09.520 does not apply. We disagree. Under the child relocation act, "a person with whom the child resides a

_____

[6] Grzegorz's assignment of error 17 states, "The Trial Court erred by overruling previous court orders finding that the mother's relocation was done in bad faith. [Clerk's Papers (CP)] 893-896, CP 4438-4454." Located at CP 4438-4454 is the trial court's entire relocation order, including the attached findings. Because Grzegorz failed to include a separate assignment of error for each finding of fact that he contends was improperly made, with reference to the finding by number, he did not properly assign error to any finding of fact. Merely including a range of pages in the clerk's papers without following the specific requirements of RAP 10.3(g) is not sufficient to assign error to a finding of fact.

11

majority of the time" must provide notice of a proposed relocation. RCW 26.09.430. There is a rebuttable presumption that the intended relocation of the child will be permitted. RCW 26.09.520. In a 50/50 residential schedule, neither parent is "a person with whom the child resides a majority of the time," so neither parent is entitled to the child relocation act's presumption permitting relocation. In re Marriage of Snider, 6 Wn. App. 2d 310, 317, 430 P.3d 726 (2018). Here, however, there was not a 50/50 residential schedule at the time of trial. Grzegorz's residential time was only two weekends per month, one overnight mid-week each week, and one visit during dinner each week. Magdalena was the parent with whom Dominic resided a majority of the time. The rebuttable presumption that relocation would be permitted applied; Magdalena was entitled to this presumption.

Grzegorz has not demonstrated that the trial court erred in its order allowing relocation.

B. Amended Parenting Plan.

On July 16, 2019, the trial court entered its amended parenting plan. In addition to the 23-page mandatory form, the trial court again attached the same additional 8 pages of 43 findings made after trial. Again, because Grzegorz fails to assign error to any of these findings, we treat them as verities on appeal. See Tapper, 122 Wn.2d at 407.

We review a trial court's decisions about parenting plan provisions for an abuse of discretion. In re Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion if the decision rests on unreasonable or

untenable grounds. Halls, 126 Wn. App. at 606. Because the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses, we are "'extremely reluctant to disturb child placement dispositions.'" In re Parentage of Schroeder, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting In re Marriage of Schneider, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), overruled on other grounds by In re Marriage of Littlefield, 133 Wn.2d 39, 940 P.2d 1362 (1997)). Decisions regarding residential provisions must be made in the best interest of the child after considering the factors set forth in RCW 26.09.187(3). In re Parentage of J.H., 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002).

Grzegorz argues that the trial court erred in the amended parenting plan by (1) failing to consider Dominic's relationship with his sibling and the parents' work schedules, (2) awarding Magdalena sole decision-making in certain areas, (3) violating his constitutional rights, and (4) ordering him to have a psychological exam and follow all treatment recommendations.

    1. The trial court properly considered Dominic's relationship with his sibling and the parents' work schedules.

In determining the residential provisions of a permanent parenting plan, the trial court considers the best interest of the child by analyzing seven factors identified in RCW 26.09.187(3)(a)(v), (vii), including "[t]he child's relationship with siblings" and "[e]ach parent's employment schedule." Grzegorz argues that the trial court failed to take into account these two factors.

Even a cursory examination of the trial court's findings proves this to be untrue. The trial court issued specific findings concerning both Dominic's relationship with his brother and the parents' work schedules:

> 34. The father and Jessica Gogolowicz recently had a child in late December whom Dominic has barely seen. It is certainly in Dominic's best interest to develop a bond with his young brother and to feel that he is very much part of the familial unit. It is concerning to the court that the father, after the baby was born, opted not to have visits at all with Dominic because of the father's frustration with having to have supervised visits. The father must learn to place Dominic's emotional needs over his own.
>
> 35. Both parents asked to be the primary custodian. The mother works full-time but has a more flexible schedule and has exhibited an ability to juggle the demands of her job with being a parent. The father also works full-time and his job is a demanding one. Since Dominic was a newborn, the father has continuously been unable to shoulder the demands of parenting due to his focus upon his work.

The trial court properly considered these factors in determining the residential provisions in the amended parenting plan.

2. The trial court did not err by awarding Magdalena sole decision-making authority in certain areas because she was reasonably opposed to mutual decision-making in these areas.

Grzegorz next argues that the trial court erred by awarding Magdalena sole decision-making authority in the amended parenting plan. We disagree.

RCW 26.09.187 provides that the court "shall" order sole decision-making authority to one parent when it finds that "[o]ne parent is opposed to mutual decision making, and such opposition is reasonable based on the criteria" set forth in the next subsection of the statute, which include "[t]he history of participation of each parent in decision making in each of the areas," and "[w]hether the parents have a demonstrated ability and desire to cooperate with

14

one another in decision making in each of the areas." RCW 26.09.187(2)(b)(iii), (c)(ii), (iii).

Initially, it should be noted that the trial court only awarded Magdalena sole decision-making authority as to certain major decisions, such as school/educational, health care (not emergency), and, in certain instances, extracurricular activities affecting the other parent's residential time. The trial court ordered other major decisions to be made jointly, including driving/car ownership, after school and work-related day care, cell phone ownership and use, and religious upbringing.

The trial court explained in its amended parenting plan the reasons it limited major decision making:

Major decision-making should be limited because:

One of the parents does not want to share decision-making and this is reasonable because of problems as described in 3.b above, the history of each parent's participation in decision-making, the parents' ability and desire to cooperate with each other in decision-making.

The "problems as described in 3.b above" are "[a]busive use of conflict-Grzegorz Gogolowicz uses conflict in a way that endangers or damages the psychological development" of Dominic.

The trial court's written reasons for its allocation of decision-making authority clearly mirror the statutory considerations in RCW 26.09.187(2)(b) and (c): a parent's reasonable opposition to mutual decision-making based on history of parental participation and demonstrated ability and desire to cooperate. These reasons are supported by the trial court's extensive and detailed findings. For

15

example, the trial court found that Magdalena has taken greater responsibility for performing parenting functions relating to Dominic's daily needs, including scheduling his medical appointments and being involved in his education. The trial court also found that Grzegorz had a "very strong agenda to malign the mother" and had "repeatedly, persistently and consistently throughout the past several years disparaged the mother."

The trial court properly awarded Magdalena sole decision-making authority in certain areas.

3. The amended parenting plan does not violate Grzegorz's constitutional rights.

Grzegorz argues that the final parenting plan violates his constitutional rights, including his Fourteenth Amendment Right to the "care, custody, and control" of his child, and his First Amendment rights to free speech and freedom of religion. We disagree.

Regarding religion, Grzegorz argues that, as a practicing Catholic who regularly attends morning mass, the parenting plan violates his rights because it allows Magdalena to schedule extracurricular activities for weekends when Dominic is with him, potentially requiring him to miss morning mass to drive Dominic to these activities. Grzegorz fails to cite any legal authority for his argument that this facially neutral aspect of the parenting plan could be construed as a constitutional violation of his right to practice his religion. In particular, he does not demonstrate that Dominic's needs will necessitate that he refrain from attending mass, as opposed to (on occasion) being required to attend mass at a time other than his preferred time.

16

Regarding speech, he argues that the parenting plan prohibits both parents from making statements comparing cars. The provision he is apparently complaining about is a facially neutral requirement crafted to prevent both parents from interrogating their child about the other parent or denigrating the other parent in front of the child: "Neither parent shall ask the child any questions regarding the other parent's parenting, behavior during her residential time, or ask questions or make statements comparing the households, churches, activities, cars, etc." He does not establish that this reasonable provision contravenes any constitutional provision.

Grzegorz also argues that, during supervised residential time, he could not speak his first language of Polish with his son because the supervisor would be unable to understand what he was saying. This issue is moot because Grzegorz's residential time is no longer required to be supervised. In any event, Grzegorz fails to identify any obstacle that prevented him from requesting a supervisor who spoke Polish, including identifying a Polish-speaking individual of his choice that could be approvable by the court as a supervisor.

Such "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" State v. Gunwall, 106 Wn.2d 54, 62, 720 P.2d 808 (1986) (quoting In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). Grzegorz's various claims are unavailing.

> 4. The trial court did not err by ordering Grzegorz to have a psychological exam and follow treatment recommendations because the order was supported by the court's findings.

17

In the amended parenting plan, the court ordered Grzegorz to have a psychological examination and follow all treatment recommendations. Grzegorz argues that this was an abuse of the court's discretion because it was not recommended by expert witnesses in the case.

The requirement for a psychological examination and treatment was supported by the trial court's findings, to which Grzegorz fails to assign error. The trial court issued extensive, detailed findings regarding Grzegorz's "very strong agenda to malign the mother," his failure to admit mistakes or recognize his own wrongdoing, and the effect all of this had on Dominic. The court then specifically found a need for psychological assessment due to Grzegorz's lack of insight and continual demeaning of Magdalena:

> While Dr. Wieder determined that neither parent has mental health issues warranting a court's concern, the court finds otherwise. The father's lack of insight, his persistence in demeaning the mother and his failure to recognize the impact this has upon Dominic warrants further psychological assessment. A continuation of this lack of insight and behavior will likely be detrimental to Dominic, especially if the father's actions exacerbate the level of stress and anxiety in this family. In addition, the father's lack of insight and behavior will likely be detrimental to Dominic if the father continues disparaging the mother to providers (i.e., teachers and medical professionals) unnecessarily.

Because Grzegorz failed to assign error to these findings, we treat them as verities. See Tapper, 122 Wn.2d at 407. They support the court's order for a psychological examination and treatment.

To the extent Grzegorz relies on the testimony of Dr. Evans, an expert witness he presented at trial, we note that the trial court found that this witness's testimony was "not reliable. Dr. Evans evidenced a bias against the mother that

18

tainted the believability of his entire testimony." Again, Grzegorz fails to assign error to this finding. We thus find his reliance on Dr. Evans's testimony unpersuasive.

Grzegorz argues that the trial court's comments about his behavior "unfairly labels him as 'mentally ill,' thus contributing to the stigma surrounding mental illness." Grzegorz fails to identify any evidence in the record that the trial court labeled him as mentally ill. The requirement for a psychological evaluation is not a label of mental illness.

The trial court did not abuse its discretion in ordering Grzegorz to have a psychological examination and follow all treatment recommendations.

C. Attorney fees: pretrial and posttrial.

Grzegorz argues that the trial court erred in awarding Magdalena attorney fees in the amount of $50,000 before trial and $150,000 after trial.

We review attorney fees granted under RCW 26.09.140 for abuse of discretion. In re Marriage of Coy, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). We also review attorney fee awards based on intransigence for an abuse of discretion. Wixom v. Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015).

"The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees." RCW 26.09.140. Family courts "shall" also have "jurisdiction and full power" in all pending cases to make orders "for attorneys' fees, suit money or costs as may appear just and equitable." RCW 26.12.190(1).

The trial court awarded Magdalena $50,000 in pretrial attorney fees on November 13, 2018, when granting the fifth continuance in the matter: "The father shall pay the mother $50,000.00 (fifty thousand) dollars in attorneys' fees and costs within 2 weeks of this order. Total attorneys' fees and costs will be ordered at end of trial, including this $50,000."

After trial, the court awarded Magdalena an additional $150,000 in attorney fees. The trial court granted $100,000 of these attorney fees due to Grzegorz's intransigence. The remaining $50,000 award was based on the court's finding that Magdalena has a strong financial need and Grzegorz had the ability to pay.

Grzegorz asserts that the trial judge who awarded the $150,000 in attorney fees after trial was "either unaware or neglected to note" the earlier $50,000 pretrial attorney fee award. To the contrary, the judge's order denying reconsideration of the attorney fees explicitly clarified that "the $150,000 judgment is in addition to the other attorney's fees and costs previously ordered in this action." The record of proceedings also reflects that at the hearing regarding reconsideration, Grzegorz brought the $50,000 previously awarded in attorney fees to the court's attention and the court acknowledged it. No error is shown.

Grzegorz also argues that he was not intransigent. The trial court found to the contrary: "Throughout the pendency of the trial and throughout the trial, the father was intransigent. The intransigence permeated the proceedings." The court also found that "[t]he father delayed in providing discovery, refused to be

20

fully forthright when providing discovery, engaged in unnecessary litigation, filed frivolous motions and caused the opposing party to incur unnecessary fees.  In short, the father was unduly difficult throughout litigation."  The court then went on to provide a detailed list of examples of Grzegorz's intransigence.  Given the trial court's detailed findings, to which Grzegorz does not assign error, the trial court did not abuse its discretion in ordering attorney fees to Magdalena based on Grzegorz's intransigence.

Grzegorz next asserts that the trial court did not have sufficient information regarding Magdalena's financial situation or attorney fees to award reasonable fees.  However, the trial court's findings specifically reflect that the court possessed and considered extensive evidence regarding finances, including "the financial declaration, the tax returns, savings and checking accounts, credit card statements, retirement accounts, investment accounts, pay stubs and the testimony provided."  The trial court also specifically found that Magdalena's attorney fees were reasonable.  Grzegorz fails to assign error to any of these findings, so we treat them as verities on appeal.  No error is demonstrated.

Grzegorz next argues that Magdalena was required to file a motion in order to obtain relief, citing to RCW 26.09.140.  But that statute, quoted above, does not require a party to file a motion in order to bring the request to the attention of the court.  His contention fails.

The trial court did not abuse its discretion by awarding Magdalena the $50,000 in attorney fees before trial or the $150,000 in attorney fees after trial.

IV

Grzegorz next alleges various errors in the contempt proceedings. Punishment for contempt of court is within the sound discretion of the trial court, and this court will not reverse a contempt order absent an abuse of that discretion. In re Marriage of Mathews, 70 Wn. App. 116, 126, 853 P.2d 462 (1993).

The trial court issued specific findings that Grzegorz violated the parenting plan. Grzegorz does not challenge those findings. Therefore, they are verities on appeal. Moreman v. Butcher, 126 Wn.2d 36, 39, 891 P.2d 725 (1995).

Grzegorz alleges that the trial court erred during the contempt proceedings when it (A) declined to recuse itself, (B) allowed for him to be served the contempt order to show cause by mail, (C) considered extraneous evidence, (D) relied on hearsay, and (E) ordered him to pay Magdalena's attorney fees for the contempt proceedings.

A. The trial judge did not err by declining to recuse herself from the contempt proceedings because she had already made discretionary rulings in the case.

Grzegorz contends that the trial judge erred by denying his request that she recuse herself from the contempt proceedings. This is so, he asserts, because he filed a notice of disqualification before the judge had made any discretionary ruling in the case. He is wrong.

"Notice of disqualification must be filed and called to the attention of the judge before the judge has made any discretionary ruling in the case." RCW 4.12.050(1)(a). For the purposes of this statute, "the case" includes "pre-trial,

22

post-trial and appellate proceedings." State v. Clemons, 56 Wn. App. 57, 59, 782 P.2d 219 (1989).

In her oral decision declining to recuse herself, the judge explained that she had issued many discretionary orders in the case: "I'm going to deny that motion because I do not believe it's a new matter. And, obviously, I've exercised a lot of discretion in issuing many orders in this matter, and I think a motion for contempt is part of this matter." The judge then issued a written order denying Grzegorz's motion for disqualification "for the reason that prior discretion has been exercised."

Grzegorz argues that contempt is a "separate proceeding," citing the criminal case of State ex rel. Russell v. Superior Court for King County, 77 Wash. 631, 138 P. 291 (1914). However, Russell was an "original proceeding"—that is, no action was pending—for criminal contempt based on actions outside the presence of the court. 77 Wash. at 633-34. The authority cited is inapposite. In fact, there is a "well-recognized distinction between criminal and civil contempt proceedings." In re Marriage of Didier, 134 Wn. App. 490, 501, 140 P.3d 607 (2006).

The judge was correct that the contempt proceeding was not a new matter. Instead it was in the "nature of a civil process issued by the court to enforce obedience to the mandate contained in its judgment." State ex rel. Gourley v. Smith, 78 Wash. 292, 293, 139 P. 60 (1914). Grzegorz had already "submitted [him]self to the jurisdiction of the court upon the trial of the principal

action." <u>Gourley</u>, 78 Wash. at 294. Thus, the contempt proceeding was "ancillary or supplemental to the original action." <u>Gourley</u>, 78 Wash. at 293.

Because the contempt proceedings were part of the same case in which the trial judge had already issued many discretionary orders, Grzegorz's notice of disqualification was untimely. The trial court did not err by declining to recuse from the contempt proceeding.

B. The trial court did not err by allowing Magdalena to serve the contempt order to show cause on Grzegorz by mail because the King County Local Family Law Rules (KCLFLR) allow for such service.

Grzegorz argues that the trial court erred by allowing Magdalena to serve the contempt order to show cause on him by mail.

KCLFLR 17(a)(2) allows for a court to order service of an order to show cause in a manner other than personal service: "*Unless otherwise ordered*, a copy of the Order to Show Cause and all supporting documents shall be personally served upon the person alleged to be in contempt." (Emphasis added.)

At the hearing on November 21, 2019, discussing the issue of service, Grzegorz's attorney stated to the court: "You said he doesn't need to be served personally, then I think he needs to be served by mail or some other method." In response, Magdalena's attorney suggested service via certified mail, and the court agreed. Magdalena mailed the order to show cause and supporting documents by certified mail, first-class mail, and one-day priority mail.

Grzegorz claims that he was prejudiced by being served by mail because it could lead to delay. Based on the dates of mailing, however, the documents

arrived well ahead of the 14-day required notice.  See CR 5(b)(2); KCLFLR 17(a)(1), 6(b)(1).  Grzegorz does not allege that the 14-day deadline was missed. The record also reflects that counsel for Grzegorz was present at the hearing at which the order to show cause was entered and received the order and motion electronically.

Because the court ordered service by certified mail, as authorized by KCLFLR 17(a)(2), and Grzegorz does not point to any actual prejudice, no appellate relief is warranted on this claim of error.

   C.  The trial court did not erroneously consider extraneous evidence.

Grzegorz alleges that the trial court erred during the contempt hearing when it stated that a different superior court judge had ordered supervised residential time with Dominic and "acknowledged the evidence presented was not sufficient."

At the contempt hearing, the trial court began its oral ruling by explaining that it was impossible to divorce its assessment of the issues at the contempt hearing from what had occurred before and during the relocation trial, and reiterated this theme again later:

> So I think that assessment of the issues presented . . . in preparation for the hearing today and at the hearing today, I think it is impossible to divorce the assessment from the events leading up to today. And by that I mean what occurred before our relocation trial, what occurred during our relocation trial, and what has occurred in the past 11 months.
>
> . . . .
>
> If these allegations and this information were new, and if it was the first time the Court heard of them, I don't think it would be adequate to find the father in violation.  And by violation I mean violating a

25

valid court order in bad faith.  But I retained jurisdiction, and one of the reasons I retained jurisdiction is because I had a huge amount of information to inform how I assessed the case going forward after the relocation trial and that would inform my ruling subsequent to the relocation trial. I cannot and I will not divorce my assessment of the issues before me from what I've learned thus far.

In the same oral ruling, the trial court stated that another judge had previously ordered that Grzegorz's residential time with Dominic be supervised:

Prior to trial, so before December of 2018, the Court, notably another judge, not me, determined that the father's visitation [residential time] should be supervised based on the concern about the father's persistent questioning of the child about the mother and about this case.

Grzegorz alleges that all the comments quoted above regarding the history of the proceedings were impermissible reliance on extraneous evidence. We disagree.

Initially, we note that the trial court's oral ruling was followed by a written decision complete with findings of fact that are verities on appeal because Grzegorz failed to assign error to them.  See Tapper, 122 Wn.2d at 407.  For this reason, Grzegorz's attempt to attack the court's contempt decision via the trial court's oral ruling is unavailing.

In any event, the trial court properly considered the history of the proceedings leading to the amended parenting plan in deciding whether Grzegorz had violated that plan in bad faith.  This was not extraneous evidence, but rather significant history of the same proceedings that helped explain the intent and purpose of the provisions of the amended parenting plan that Grzegorz was alleged to have violated.  As the trial court noted, the concerns expressed in the contempt proceedings by the mother, guardian ad litem, and

Dominic's therapist were the same concerns expressed before trial, leading to supervised residential time and, at trial, leading the trial court to put specific provisions in the parenting plan to protect Dominic's emotional well-being. Under these circumstances, the trial court properly considered Grzegorz's history of the same injurious behavior in finding that his violation of the parenting plan provisions specifically designed to ensure Dominic's emotional well-being was in bad faith.

Specifically regarding supervised residential time, if the same superior court judge had previously ordered supervised residential time, she could have considered it; the fact that a different judge was assigned to the case earlier does not change the analysis. The trial court expressly considered and declined to order supervised residential time as a remedy for contempt.

The trial court did not err.

D. The trial court did not rely on hearsay.

Grzegorz argues that the trial court erred in relying on hearsay to find him in contempt. Specifically, he argues that "Magdalena relied on self-serving hearsay under Rule 802 from their child, Dominic, as well as a report from the Guardian Ad Litem. [Report of Proceedings] 12/18/19 pp. 29, 132, 143."

Grzegorz objects to admission of the guardian ad litem's report on the basis that he did not have the opportunity to cross-examine Dominic's therapist, whom the guardian ad litem had consulted for the report. RCW 26.09.220(3) states that any party "may" call as a witness any person whom the guardian ad litem "has consulted for cross-examination."

27

The trial court repeatedly acknowledged that Grzegorz had the right to cross-examine Dominic's therapist, Dr. Maizel, and that Grzegorz had sufficient time to subpoena him for the hearing. Grzegorz was not prevented from exercising his right to cross-examine the counselor. The fact that Grzegorz, for whatever reason, did not exercise this permissive—not mandatory—right did not preclude the trial court from accepting the guardian ad litem's report into evidence.

Regarding the alleged hearsay from Dominic, Grzegorz fails to identify any specific statements from Dominic that he believes were hearsay. However, based on the citations to the record he provides, it appears that he is referring again to the guardian ad litem's report. Thus, the same analysis as above applies.

In short, the trial court did not err by admitting the guardian ad litem's report.

E. The trial court properly awarded Magdalena her attorney fees for the contempt proceedings.

When the trial court holds a parent in contempt of an order pursuant to RCW 29.09.160(1), the court "shall" punish the party "by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court." The statute is mandatory. Grzegorz argues that the amount of attorney fees awarded was not reasonable. However, the trial court found that it was: "The lawyer fees and costs listed in the Money Judgment in section 8 below were incurred and are reasonable." Grzegorz failed to raise this issue below and fails to assign error to this finding on appeal. The trial court

did not abuse its discretion by awarding Magdalena $6,949.44 in attorney fees for bringing the successful motion for contempt. See Coy, 160 Wn. App. at 807 (a court's award of attorney fees under RCW 26.09.140 is reviewed for abuse of discretion).

V

Grzegorz appeals several rulings that are now moot. We therefore decline to address them.

"'[W]here only moot questions or abstract propositions are involved, . . . the appeal . . . should be dismissed.'" Hart v. Dep't of Social & Health Servs., 111 Wn.2d 445, 447, 759 P.2d 1206 (1988) (alterations in original) (quoting Sorsenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). We will review moot issues only if they are of "continuing and substantial interest." Hart, 111 Wn.2d at 447. None of Grzegorz's moot claims meet this standard.

Grzegorz challenges the November 13, 2018 pretrial order requiring that his residential time with his son be supervised, and the court's ruling denying his request to lift the supervision requirement before it ruled on final orders. These challenges are moot because the supervision requirement was terminated upon entry of the modified parenting plan on April 5, 2019, which lifted the supervision requirement.

Grzegorz also challenges the October 29, 2019 temporary restraining order suspending his contact with his son. This challenge is also moot because the court terminated the temporary restraining order on November 18, 2019.

29

Because these issues are moot, we decline to further address them.

VI

Magdalena requests that we order that Grzegorz pay her attorney fees on appeal, listing four bases for this request: (1) RCW 26.09.140, based on the parties' relative financial resources ("Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs."); (2) RCW 26.09.160, for appealing a contempt order; (3) appealing an order awarding attorney fees based on his intransigence; (4) because the appeal is frivolous and the deficiencies of the opening brief violate the appellate rules, unnecessarily increasing the mother's attorney fees.

In this appeal, Magdalena successfully defended the trial judge's award of attorney fees; the cost of defending these awards are compensable on appeal. See RCW 26.09.140. Magdalena also successfully defended the contempt order; because Grzegorz failed to comply with certain elements of the amended parenting plan in bad faith, he is responsible for paying reasonable attorney fees that Magdalena incurred to enforce the court's contempt order. See RCW 26.09.160(1), (2)(b)(ii); In re Marriage of Eklund, 143 Wn. App. 207, 218, 177 P.3d 189 (2008). In our discretion, we also award Magdalena the remainder of her attorney fees on appeal because she has made a showing of need and Grzegorz's ability to pay. See RCW 26.09.140. Accordingly, we award Magdalena her full reasonable attorney fees on appeal payable by Grzegorz in

an amount to be determined by a commissioner of this court upon Magdalena's compliance with our rules.

Magdalena further requests that we make Grzegorz's appellate attorney jointly responsible for paying her attorney fees on appeal, and sanction both Grzegorz and his appellate counsel. We decline to do so. We are satisfied that the award made by our commissioner will prove sufficient.

VII

Magdalena cross-appeals, arguing that the trial court erred by not ordering remedial sanctions when it found Grzegorz in contempt. Magdalena argues that the trial court erroneously believed that it lacked the authority to make changes to the parenting plan necessary to protect Dominic's emotional well-being when it found Grzegorz in contempt.

However, the issue identified by the trial court was not that it lacked authority. The trial court recognized that it had the authority to order remedial sanctions. For example, it considered the remedies of limiting Dominic's residential time with Grzegorz, imposing supervised residential time with Grzegorz, and therapy or other evaluations for Grzegorz.

The concern identified was that the trial court did not believe that any of these remedial sanctions would be effective:

> In this extraordinary circumstance, the court cannot identify any potentially effective remedial measure in response to the father's contempt. . . .
>
> . . . .
>
> While the court believes the interactions between the father and child must change, the court does not believe there are remedial

31

sanctions available that could coerce compliance with the order and therefore, no remedial sanctions are ordered.

Under these circumstances, we decline Magdalena's request that we issue an advisory opinion to the trial court by remanding with general instructions to review whether Grzegorz is complying with the parenting plan or to reconsider its contempt order. Magdalena has demonstrated throughout the proceedings that she is well aware of her right and ability to bring concerns regarding the parenting plan or Grzegorz's noncompliance therewith to the trial court's attention.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____     _____
Brennan, J                              Appelwick, J.