IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parenting Plan of<br><br>JOSEPH EUGENE VALLEROY,<br><br>    Respondent/Cross-Appellant,<br><br>and<br><br>MELISSA PALOS,<br><br>    Appellant/Cross-Respondent. | No. 84518-7-I<br>(Consolidated<br>with 85079-2-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Joseph Valleroy, who lives in SeaTac, Washington, agreed to be responsible for all transportation of his daughter, J.V., during his residential time. He agreed to this before he realized that J.V.'s mother, Melissa Palos, planned to move J.V. further south with her from Kent to Bonney Lake, Washington. Valleroy objected to the relocation. The trial court denied Palos' petition to relocate and modified the parenting plan and child support. Palos appeals only the denial of relocation arguing that the trial court did not correctly consider the mandatory factors of RCW 26.09.520 under the Child Relocation Act (CRA). We agree, reverse, and remand for a new relocation determination. In this consolidated appeal we also review the trial court's denial of Valleroy's request for attorney fees and costs after the court held Palos in contempt after finding she acted in bad faith. Because awarding attorney fees and costs under RCW 26.09.160 is mandatory, we reverse the trial court and remand for

further proceedings.

FACTS

J.V. was born to Palos and Valleroy in 2014. The parents separated in 2018. In May 2021, the parties, while represented by counsel, entered into an agreed final parenting plan which gave Palos primary custody of J.V. and recognized that Valleroy had a history of domestic violence (DV). Because Valleroy had already completed DV intervention treatment, the parties agreed to residential time during the school year consisting of alternating weekends and every Wednesday after school until Thursday morning. Additional residential time identified in the plan for the summer and holiday schedules would not be implemented until Valleroy completed additional DV-related services. The only other limitation placed on Valleroy because of his DV history was that Palos be the sole major decision-maker. There were no other limitations placed on Valleroy under RCW 26.09.191. The plan required each parent to provide transportation to J.V.'s weekly counseling session during their residential schedule, and provided that the mother was responsible for locating a counselor. The plan was also signed by a guardian ad litem. The plan required the parties to participate in mediation to try and resolve disagreements prior to going to court.

In February 2022, following mediation, the parties agreed to modify the previous parenting plan.[1] The general transportation arrangements remained the same: Valleroy being responsible to transport J.V. to and from all locations during his residential schedule with exchanges taking place at the daycare parking lot when school or

---

[1] The changes involved scheduled contact with the non-resident parent during summer vacations; the father, instead of the mother, taking responsibility to find J.V. a counselor; and specific directions on how Palos shall be responsible for a third cell phone to be purchased by Valleroy so that he could call J.V. at any reasonable time.

daycare were not in session. During this time Palos lived in Kent along with an older daughter from a prior relationship. Valleroy lived in SeaTac with his girlfriend and her two young boys in a house he owns.

After Valleroy signed the agreed modified February parenting plan, he received Palos' notice of intent to relocate with J.V. from Kent to Bonney Lake. Palos explained the reasons for the move in the notice: more family support to help with her children in case they are sick and with afterschool activities and sports; reduced time in daycare; a better school that is within walking distance where Palos' mother and J.V.'s older sibling can pick up J.V.; J.V. and her older sister could have their own rooms; and the relocation would be more "economical" for Palos herself. Valleroy filed his objection to the relocation in March. Palos moved to Bonney Lake in the first week of June, prior to the relocation hearing.[2] Along with his objection to the relocation, Valleroy filed a pro se proposed parenting plan which modified the existing parenting plan in one respect, requiring *all* child drop-offs and pick-ups to take place at a specific mall in Auburn. Valleroy considered this location, which was south of Kent, to be the approximate mid-way point between their respective residences.

Prior to the relocation hearing, the parties again participated in mediation, and entered into a CR 2A agreement that addressed some of their disagreements.[3] The agreement required that Palos sign the consent necessary for J.V.'s counselor to

---

[2] Valleroy did not move for an order denying relocation on the basis that Palos relocated without consent of the court. And while Palos argued below that Valleroy had agreed to the relocation, the court did not find that credible and she abandons that argument on appeal.

[3] Valleroy had filed a motion in May 2022 for a temporary order restraining Palos from moving the child. The hearing was scheduled for June 7. The record is silent as to what happened to Valleroy's motion for temporary order or the June 7 hearing. By June 7, Palos had already moved and the CR 2A agreement was signed on June 10, 2022.

provide counseling services to J.V.  The agreement also addressed transportation.  It required the existing residential schedule and transportation provisions to remain the same through June 20, 2022.  It then determined the exchange locations for Valleroy's two-week summer residential time (a park-and-ride station in Kent).  The parties agreed to the residential schedule and transportation responsibilities for the remainder of the summer.[4]  The agreement expressly stated it did not cover the school year starting in fall 2022 and that "the parents shall either use the trial date for the relocation action or the dispute resolution provision of the parenting plan now in effect to resolve that issue."  Additional facts pertinent to the contempt issue will be discussed below.

Trial

Valleroy obtained counsel for trial.  Though the record only includes Valleroy's pro se proposed parenting plan, his trial brief identified significantly different demands.[5]  He averred that he had completed the remainder of the DV-related services outlined in the existing parenting plan and asked that the previous limitations that were placed on him be removed.  He also requested to be the "primary caretaker" and that decision-making should be joint.  According to the trial brief, Valleroy proposed modifications to

---

[4] Every Wednesday - Thursday:
    Dad picks up at noon at child's day care (Recreation Center in Bonney Lake) until Thursday at 6:00 p.m. (exchange at Kent Des Moines / Military Road Park and Ride).
Alternating Friday - Monday:
    Mom drops off child at 5:00 p.m. (exchange at Kent Des Moines / Military Road Park and Ride) until 6:00 p.m. on Monday (exchange at Coastal Farm and Ranch Supply: 1425 Supermall Way, Auburn, WA).
Any exchanges not detailed herein shall take place at Coastal Farm and Ranch Supply [located in Auburn].

[5] Valleroy's trial brief suggests that counsel may have submitted a different proposed parenting plan reflecting the proposed changes in his trial brief.  However, the record only contains Valleroy's pro se proposed parenting plan, submitted when he first filed his objection to the relocation.

4

the transportation section of the parenting plan and the residential time. Valleroy asserted in his trial brief that the current parenting plan "requires [Valleroy] to drive at least 30-40 minutes per trip." During trial, Valleroy clarified that if relocation was denied and Palos returned to a location in Kent that did not trigger a relocation issue, he would still seek to have the major decision-making authority and residential time divided equally between the parents.

Palos appeared pro se at trial. She did not file a trial brief, but did file a response to Valleroy's objection. She wrote that J.V. would finish her school year in Kent, that residential time spent with Valleroy would not change, and that relocation would allow J.V. to have family nearby and spend less time in daycare. Palos did not submit a proposed parenting plan, but did request at trial the removal of the mid-week Wednesday overnights, exchanges that required her to have any contact with Valleroy, and any requirement that she participate in counseling with Valleroy.

The parties agreed to an informal trial under the local court rules where the court admitted each party's exhibits and allowed each to testify and ask the court questions they would like the court to ask the other side. See KING COUNTY SUPER. CT. LOC. FAM. L. R. 23. The court also asked each party questions sua sponte.

Both parents disputed facts about issues that would exist regardless of relocation. They each accused the other of not helping with J.V.'s homework, making baseless reports to Child Protective Services, interfering with the other parent's ability to speak with J.V., and coaching or bribing the child. Palos claimed that Valleroy's DV history was based on him physically assaulting Palos in front of J.V. Valleroy denied ever assaulting Palos and suggested that his history of DV was based on verbal

conduct where he did not walk away when he should have. Valleroy claimed J.V. was behind in school and may need special education. Palos said J.V. has not been tested to determine if she needs special education and that the testing has not been done because she was not comfortable doing that with Valleroy.

Palos testified that her house in Bonney Lake is closer to her mother, who helps out with her kids. She said her mother works five minutes away from the house and comes over to have lunch with the kids and spend a lot of time there. Palos also testified that because the house is within walking distance of J.V.'s school, J.V.'s older sister could pick up J.V. from school. She also testified that she could afford to buy a house with the assistance of the father of her oldest daughter instead of paying rent. The house was big enough to where her daughters could have their own bedrooms, and Palos could run a home daycare. She conceded that she still needed to be certified in how to run a daycare, and obtain a license. Regarding transportation, Palos testified that the transit time between Valleroy's house and her prior residence in Kent was 30 minutes and her relocation to Bonney Lake had added 10 minutes to that transit time. Palos testified, though she was currently on leave from work in Federal Way because of an injury, she recently had her work schedule change from Monday through Thursday to Monday through Friday. Because of the change in her work schedule, the current residential schedule would put her job at risk, Palos explained, because she would have to leave work early every other Friday in order to drive south to pick up J.V. in Bonney Lake and turn around and drive back north in order to drop her off at 5 p.m. at the exchange location of Kent Des Moines/Military Road Park and Ride, as specified in the CR2A agreement. Palos testified that she had asked her employer to return her

6

schedule to working four 10-hour days Monday through Thursday, but her employer said they would discuss it when she returned from leave.

Valleroy testified that the move to Bonney Lake "creates a barrier to our father, daughter relationship" and "changes the school [J.V] attends, which in and of itself is a significant source of stab[ility]." He also described the transportation time with J.V. as their "one-on-one time" when no one else is around and J.V. will talk to Valleroy about her friends at school or "whatever." He said had he known Palos would be moving J.V. to Bonney Lake, he would never have agreed to the transportation plan in the last parenting plan. Valleroy said the relocation placed a substantial burden on him. He said it created a minimum of four 40 to 50 minute trips four times a week. It also created logistical issue with work and placed a burden on others in his household to pick up J.V. Valleroy ran his own business out of his home that involved pickup and delivery of heavy construction equipment. Valleroy said that his girlfriend has no problem helping, but "you suffer having a realistic suppertime and so forth, time for homework and having little time for social hours, too." Valleroy said he wanted custody "reversed" and, in the alternative, a major modification to the parenting plan. Valleroy discussed his desire to keep the Wednesday residential time with J.V. so that he could be assured she would make it to child therapy appointments in Bothell on those evenings.

Relocation Decision

One week after the end of the trial, the court issued its decision denying relocation. The court found that J.V. lives most of the time with Palos. The court's

order included its analysis of 10 factors[6] under RCW 26.09.520. The court analyzed the

factors under RCW 26.09.520 as follows:[7]

Factor (1): "the relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life."

> The trial court found that
>
> This is a chaotic and dysfunctional parenting arrangement. Both parents love the child and want to support and nurture her. They have been unable, however, to keep the child from being torn between them due to their feelings and distrust of one another, or to foster a positive relationship with the other parent. When not being exposed to conflict by one or the other parent, the child appears to have positive relationships with each parent, step-siblings, and extended families in each home. The child has been moved and shuttled from homes, schools, and daycares. She will benefit from stability and structure in her daily life, and the opportunity to mature in stable environments. The relocation is one more move to a new community, school, and daycare. It places undue demands on Petitioner to provide transportation to and from high volume traffic locations, which add stress and anxiety to maintenance of his relationship with the child. The move is entirely voluntary, with no concrete evidence of the value it would bring to the child in nurturing her familial relationships, school, or other community connections. Respondent reports that she will have more help from extended family members and the child will have more opportunity to be in their company, but nothing other than personal preference prevents Respondent's extended family from continuing their support. Nor should those factors alone override the importance of the child maintaining a positive relationship with her father and his family. Despite a great deal of anxiety by Respondent, which likely could be reduced if she would take positive steps to address her concerns, Petitioner is just as capable and just as deserving of maintaining a strong and healthy relationship with the child.

Factor (2): "Prior agreements of the parties."

> The court found that there were no agreements about moving with J.V.[8]

---

[6] Because Valleroy no longer sought a temporary order restraining Palos from moving, factor 11 ("amount of time before a final decision can be made at trial") did not apply. RCW 26.09.520(11).

[7] We quote the language of the factors under RCW 26.09.520.

[8] During trial, Palos claimed she had Valleroy's consent to move. The trial court did not find her claim credible.

Factor (3): "Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation."

The trial court found that disrupting J.V.'s contact with Palos would not be more harmful to them than disrupting J.V.'s contact with Valleroy. The court explained:

> The Court has spent considerable time trying to devise a residential schedule that would maximize structure and stability for the child and help foster healthy relationships with each parent if relocation were allowed. While the relocation may well be beneficial to [Palos], it places undue strain on [Valleroy] to provide excessive transportation across high volume traffic areas simply to maintain a shared residential schedule with the child. It imposes this burden without sufficient justification in support of the relocation, to the child's detriment.

Factor (4): "Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191."

The trial court found that because Valleroy completed DV treatment and parenting classes the RCW 26.09.191 limitations on his residential time were "no longer warranted." The court rejected Valleroy's request to place limitations on Palos for abusive use of conflict, though the court agreed that Palos had "exacerbated conflict between the parties." The court found both parents "relied on CPS and police reporting that escalates tensions and fear with little substantive evidence to support" such serious interventions, and that both were to comply with the terms in the parenting plan to deescalate these events.

Factor (5): "The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation."

The trial court found the reasons given for moving and the reasons given for objecting were given in good faith.

Factor (6): "The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child."

9

The trial court did not enter any findings if the move was allowed, but entered the following findings if the move was not allowed.

> By not allowing the move, the child will spend more relaxed time with the parents, both of whom can provide nurturing homes for the child. The child will benefit by stability, structure, and predictability. She is not performing at grade level in many academic courses. A stable school and daycare, as well as standards and structure for completing her homework, will help her progress and not fall farther behind. Another major transition in her life at this time does not support her need for counseling, emotional stability, and educational structure. The requested move is not premised on and does not facilitate any of these benefits. The child also will benefit from spending more time with Petitioner and his family to allay perceptions and fears that appear to be reinforced in Respondent's home. As the child matures, she will become more able to draw on her own experiences to nurture relationships with both parents.

Factor (7): "The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations."

> The court found that the primary benefits Palos
>
> present[ed] to justify the move is that (1) she is buying a house with a former partner that she would like to turn into an in-home daycare business, and (2) she will be closer to her extended family for support and parenting help. The Court agrees that the opportunity to buy a house, and the plan to open in-home daycare, are good opportunities. Unfortunately, no evidence has been offered to support either claim. Respondent's financial records do not support her testimony that she has been paying on a mortgage. There is no purchase and sale agreement, deed, or contract that documents a purchase. Respondent has made no plans toward opening in-home daycare and does not know the requirements for licensure or maintenance of this business. These are great ideas, but there is no evidence to show they are more than ideas. In addition, the relocation comes at the expense of the child's relationship with Petitioner and the demands placed on him to increase transportation even to maintain the current residential schedule. It also keeps the child's experiences with each parent separate and disjointed from one another. In closer proximity, both parents can support the child as she develops peer friendships and participates in school and extracurricular activities. This benefits the child.

Factor (8): "The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent."

The court found

As noted above, the Court carefully considered that if [Palos] were allowed to relocate as proposed, how the parenting plan could be modified to reduce relocation's negative effects on both [Valleroy] and the child. [Valleroy] asked to reverse the parenting plan to make him the primary parent. Based on the child's developmental stage and primary dependence on [Palos], so dramatic a residential change is not desirable. The Court considered several adjustments to the residential schedule to increase [Valleroy's] residential time with the child, but they all result in [Valleroy] being obligated to provide extensive transportation of approximately 30-40 minutes each trip to and from school multiple times a week. This arrangement is not sustainable or healthy for the child. The Court's conclusion is underscored by the fact that the move is discretionary and without evidentiary support.

[Palos] asks to remove the Wednesday overnight with [Valleroy] due to the transportation burden she would incur with the relocation. Denying relocation also eliminates this burden. [Palos'] request is denied.

Factor (9): "The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also."

The court found that Valleroy cannot relocate because he owns his own home, runs his business out of his home in SeaTac, and resides with two children who are involved in the local schools and activities.

Factor (10): "The financial impact and logistics of the relocation or its prevention."

The trial court found that

There will be a financial impact on [Palos] to return to the same school district in which she was living as she already has moved. She apparently is not paying rent/mortgage or utilities in this arrangement. [Palos] testified that it would be difficult to maintain her job, close to her previous location, from her new location if she has to transport the child to and from school or activities during the day. By not allowing relocation, this issue is avoided. Child support also will be adjusted to reflect the parties' current financial circumstances. [Palos] must carefully consider the importance of keeping her job.

The court concluded that based on its analysis of the factors, the relocation would

"cause more harm than good to the child and the person who wants to move." The court found that "the person who asked to move with the child has decided not to move without the child." The court denied Palos' request to relocate the child to Bonney Lake from her previous residence in the Kent School district. The court also changed the parenting plan giving Valleroy one additional day every other week and joint major decision-making authority. The court still identified Valleroy's DV history, but terminated all previously agreed-to limitations imposed on Valleroy because he "met all conditions and requirements, including completion of Domestic Violence Intervention Treatment, listed in the previous final parenting plan." Under the new parenting plan, J.V. still stays with Palos most of the time. Child support was also modified "to reflect the change in residential time and the parties' current financial circumstances."

The court also modified the transportation arrangements. Exchanges of J.V. shall occur "at 5:00 p.m. at the Kent Des Moines/Military Road Park and Ride."[9]

The court ordered Palos to return with J.V. to "live in the Kent school" within 30 days of the court's order. The court denied Palos' motion for partial reconsideration of the school and summer residential schedules in the new parenting plan and the court's order that she relocate to Kent within 30 days.

Later, the court found Palos acted in bad faith in regards to her compliance with the parenting plan and held her in contempt, but denied Valleroy's motion for attorney fees and costs. The court denied Valleroy's motion for reconsideration of the contempt hearing order. We discuss additional facts below.

---

[9] The plan also allowed a parent, during the parent's residential time, to pick up J.V. after school or daycare as needed to accommodate schedules. The parties could agree to a more convenient exchange location.

12

Palos appeals the order denying her request to relocate and the denial of her motion for reconsideration. Valleroy appeals the court's contempt order and the court's denial of his motion for reconsideration. This court consolidated the appeals.

DISCUSSION

Relocation Order

A trial court's ruling on relocation is reviewed for abuse of discretion. In re Marriage of Kim, 179 Wn. App. 232, 240, 317 P.3d 555 (2014). "An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012) (citing In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

Littlefield, 133 Wn.2d at 47. "A trial court necessarily abuses its discretion if its decision is based on 'an erroneous view of the law' or if its decision 'involves incorrect legal analysis.'" Shrauner v. Olsen, 16 Wn. App. 2d 384, 401-02, 483 P.3d 815 (2020) (quoting In re Marriage of Selley, 189 Wn. App. 957, 959, 359 P.3d 891 (2015)). We will not reweigh the evidence or disturb the trial court's determinations regarding the credibility of witnesses. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). However, we will review de novo whether the trial court's findings of fact support its conclusion of law on relocation. Shrauner, 16 Wn. App. 2d at 402.

The CRA "governs the process for relocating the primary residence of a child who is the subject of a court order for residential time." In re Marriage of Abbess, 23

Wn. App. 2d 479, 485-86, 516 P.3d 443 (2022) (citing In re Marriage of McNaught, 189 Wn. App. 545, 553, 359 P.3d 811 (2015)). The CRA creates a rebuttable presumption that the intended relocation for the child will be permitted when the relocating parent enjoys the majority of the child's time. Id. at 487 (citing RCW 26.09.520). It is undisputed that the rebuttable presumption applies here because J.V. spent the majority of her residential time with Palos. This "rebuttable presumption" standard "incorporates and gives substantial weight to the traditional presumption that a fit parent acts in his or her child's best interests, including when that parent relocates the child." McNaught, 189 Wn. App. at 553 (citing In re Marriage of Horner, 151 Wn.2d 884, 894-95, 93 P.3d 124 (2004)). The parent attempting to rebut the presumption must meet a preponderance of the evidence standard, under the theory that "both parents in a relocation dispute have a substantial right to parent their child." In re Marriage of Wehr, 165 Wn. App. 610, 614, 267 P.3d 1045 (2011).

This court recognized in McNaught that the CRA's rebuttable presumption on relocation "does not disappear upon a[n objecting] party's production of evidence." 189 Wn. App. at 555. Rather, the CRA's language about the presumption in favor of the person proposing relocation "provides the standard the trial court uses at the conclusion of trial to resolve competing claims about relocation." Id. at 556. If the presumption in favor of relocation disappeared upon the production of any evidence by the objecting party, it "would do little to further the legislature's apparent purpose of generally favoring relocation." Id. This analysis of the legislature's purpose was guided by Horner, where our Supreme Court noted that the CRA relocation statute's 11 factors "serve as a balancing test between many important and competing interests and circumstances

14

involved in relocation matters. Particularly important in this regard are the interests and circumstances of the relocating person." 151 Wn.2d at 894 (footnote omitted). "Because the relocation presumption reflects a legislative policy decision and Washington case law requires a quantum of proof to rebut it, this presumption shifts the burdens of production and persuasion to the parent opposing the relocation." McNaught, 189 Wn. App. at 549.

As a preliminary matter, Valleroy contends Palos did not assign error to any of the court's findings of fact and, thus, they are verities on appeal. Ordinarily, unchallenged findings of fact are treated as verities on appeal. Noble v. Lubrin, 114 Wn. App. 812, 817, 60 P.3d 1224, 1227 (2003). "But the appellate court may excuse a party's failure to assign error where the briefing makes the nature of the challenge clear and the challenged finding is argued in the text of the brief." Id. While Palos did not specifically list the challenged factual findings in her assignments of error, she does substantively challenge several of the trial court's findings in her discussion of the 10 factors under RCW 26.09.520. For us to determine if the court abused its discretion in denying the relocation, we must be confident that the court applied the proper legal standard while viewing the evidence and making its findings.

"The trial court must find by a preponderance of the evidence that [the opposing party] show[ed] that relocation would be more detrimental than beneficial, and it must make findings on the record regarding each of the factors." Kim, 179 Wn. App. at 241-42; see also Horner, 151 Wn.2d at 894 (noting that the interests and circumstances of the relocating parent are "[p]articularly important" in the CRA's balancing test and that the legislature expressly decided against using a "best interest of the child" standard).

Each factor has equal importance, and they are not weighted or listed in any particular order but rather provide a balancing test between the competing interests and circumstances that exist when a parent wishes to relocate. McNaught, 189 Wn. App. at 556. A trial court may abuse its discretion if it considers facts irrelevant to a particular factor or fails to consider relevant facts necessary for applying a factor. See Shrauner, 16 Wn. App. 2d 384, 412-13, 483 P.3d 815 (2020).

The record does not give us confidence that the trial court applied the proper legal standard in analyzing factors (3), (6), (7), (8), and (10) of RCW 26.09.520.

Factor (3): *"Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation."*

Palos argues that under factor (3) the court should have, but did not, consider whether disrupting contact with the person seeking relocation would be more harmful to the child than disrupting contact with the objecting parent. We agree.

Instead of examining how, with Palos living in Bonney Lake and Valleroy living in SeaTac, denial or granting relocation would disrupt the contact between J.V. and her parents, the court focused on the "undue strain" relocation would place on Valleroy in having to provide "excessive transportation across high volume traffic areas simply to maintain a shared residential schedule with the child."

The court's analysis errs in its application of this factor in several ways. First, this factor is supposed to focus on the child's interests, not those of the parents. Shrauner, 16 Wn. App. 2d at 406; see also Horner, 151 Wn.2d at 894 fn.9 ("Factors 1, 3, 6, and 8 focus on the child's interests."). Second, the transportation responsibility is an issue the court may need to address in the parenting plan *after* the relocation decision is made.

16

When residential time is shared, both parents would be required to travel with J.V. See Shrauner, 16 Wn. App. 2d at 408 (holding that "travel time is an irrelevant consideration under this factor. Both parents would be required to travel with [the child], regardless of whether the trial court permitted [the parent] to relocate with [the child.]"). Third, the court did not consider how denial of relocation would be disruptive to J.V.'s contact with Palos considering the undisputed fact that J.V. has spent the majority of her life with Palos.

Factor (6): *"The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child."*

Under factor (6), the court entered no findings under the section "if move is allowed" and only considered this factor "if move is not allowed," under which it found that J.V. would benefit by "stability, structure, and predictability," and from having "[a] stable school and daycare." By entering no finding as to how J.V.'s development needs would be likely impacted if the court permitted the presumptively permissible move, the trial court misapplied the legal standard.

It appears the court improperly analyzed this factor under the assumption that the mother would not move to Bonney Lake if she were not allowed to relocate J.V. The trial court must assume under RCW 26.09.530 that Palos *will* relocate regardless of its decision as to J.V. Shrauner, 16 Wn. App. 2d at 420. The "trial court is expressly prohibited from considering 'evidence on the issue of whether the person seeking to relocate the child will forego his or her own relocation if the child's relocation is not permitted.'" Id. at 413 (quoting RCW 26.09.530). The father lived in SeaTac and the mother lived to Bonney Lake, and there was no basis in the record to support that if

relocation was denied J.V. would somehow still attend the same school and daycare within the Kent School District.

Factor (7): *"The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations."*

Factor (7), "'[b]y its plain language . . . considers only the relocating parent's current and proposed circumstances, with no counterbalanced consideration of the other parent's circumstances.'" Shrauner, 16 Wn. App. 2d at 415 (quoting Bergerson v. Zurbano, 6 Wn. App. 2d 912, 922, 432 P.3d 850 (2018)). However, the trial court's finding improperly considered the inconvenience of travel to Valleroy, the nonrelocating party. The court found that "the relocation comes at the expense of the child's relationship with [Valleroy] and the demands placed on him to increase transportation even to maintain the current residential schedule."

Factor (8): *"The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent."*

In determining factor (8), it is improper as a matter of law to interpret this factor as requiring the parties to have the same residential schedule or quantity of residential time as under the prior arrangements. Shrauner, 16 Wn. App. 2d at 417.

It appears the trial court did not consider, beyond transportation demands, other alternative arrangements to foster and continue J.V.'s relationship with both parents if relocation was granted or denied. The trial court found that Valleroy was "obligated to provide extensive transportation of approximately 30-40 minutes each trip to and from school multiple times a week." Not only does this appear to presume that the transportation arrangements under the prior parenting plan must be applied, the court did not mention the fact that Palos also would have longer transportation responsibilities

18

because of the shared residential time. The court's response to the transportation burden was to say that "denying relocation also eliminates this burden." This improperly assumes and considers that Palos would not relocate without J.V. RCW 26.09.530; Shrauner, 16 Wn. App. 2d at 420.

Factor (10): *"The financial impact and logistics of the relocation or its prevention."*

Under factor (10) the court again improperly considered and assumed that if relocation is denied, Palos would not move to Bonney Lake. The court observed that Palos "testified that it would be difficult to maintain her job, close to her previous location, from her new location if she has to transport the child to and from school and activities during the day." The court addressed this potential financial impact by concluding "[b]y not allowing relocation, this issue is avoided." The court can only admit and consider evidence of whether Palos will move without her child "after it makes the decision to allow or restrain relocation," and only in order to resolve custody, visitation, and other parenting issues that remain before the court. RCW 26.09.530. Since "RCW 26.09.530 expressly removes the parent's personal decision to relocate from the trial court's consideration until relocation with the child has been decided," Shrauner, 16 Wn. App. 2d at 413, assumptions about Palos' financial circumstances if she were to reverse her move to remain with J.V. are not a proper consideration before the trial court. Id. at 420 ("[T]he trial court must assume, under this statute, that [the parent proposing relocation] will relocate.").

We reverse the order denying relocation because the trial court applied the wrong legal standard in its consideration of several of the mandatory factors, thus its

ruling was based on untenable grounds and the court abused its discretion in denying the relocation. We remand for a new relocation determination.

Recognizing the trial judge has since retired and circumstances of the parties and J.V. may have changed, on remand the trial court may review the evidence anew based on the existing record and, in its discretion, conduct a hearing to consider additional evidence. Though Palos did not appeal the parenting plan or child support order, a "court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child." RCW 26.09.260(6). Thus, on remand the trial court may revisit those orders as needed following its new relocation determination.

## Attorney Fees

In October 2022, Valleroy moved the trial court to find Palos in contempt. In January 2023[10] the trial court found Palos acted in bad faith for the following reasons:

1. [Palos] delayed and refused until contempt proceedings were pending to provide accurate information to [Valleroy] to maintain health insurance for the child.

2. [Palos] failed to cooperate and facilitate regular and private telephone contact as provided in the parenting plan. She has not completed parenting education or supported the child's therapy by paying her share of costs, thereby jeopardizing its continuation.

3. [Palos] failed to cooperate to engage a tutor to work with child relating to her education and as recommended in her IEP.[11]

The court held these bad faith acts were in violation of the court's parenting/custody order, that Palos had the ability to follow orders in the past,

---

[10] The trial court initially set review for December 16, 2022 then set a purge review hearing for January 6, 2023 to give Palos time to cure defects.
[11] Individualized Education Program.

and that she has the ability to follow the orders now. The court found Palos in contempt. Valleroy requested attorney fees and costs and cited chapter 26.09 RCW, among other statutes as supporting authority.

The court declined to grant Valleroy's request for attorney fees and costs,[12] explaining,

> [a]lthough [Valleroy] has prevailed in his contempt petition and has incurred fees and costs in the process, the Court declines to award them. This is due to the disparity between the parties' economic circumstances and [Palos'] current financial challenges. It is inequitable and counterproductive to award attorney fees and costs here where [Palos] cannot pay them and her monies are better devoted to services as required by the parenting plan.

Valleroy appeals the court's denial of his motion for attorney fees and cost and its denial of his motion for reconsideration.

Parents who are subject to a parenting plan and have their actions deemed to be in "bad faith" by the court "shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court." RCW 26.09.160(1). "Under RCW 26.09.160(2)(b)(ii), the court 'shall order . . . [the contemnor] to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance[.]'" In re Marriage of Rideout, 110 Wn. App. 370, 382, 40 P.3d 1192 (2002) (alterations in original), aff'd, 150 Wn.2d 337, 77 P.3d 1174 (2003). "When the trial court finds a parent in contempt of an order pursuant to RCW 26.09.160, the court must order the noncomplying party to pay to the moving party." In re Marriage of Wolk, 65 Wn. App. 356, 359, 828 P.2d 634 (1992).

---

[12] The court also set another review date to check for compliance, having set out a list of the actions by which Palos could purge the contempt order.

Palos does not challenge the substance of the court's contempt finding. Instead, she argues that the omission of the contempt hearing's oral record on appeal prevents proper review of this issue, or in the alternative, that it was within the trial court's discretion to find that no attorney fees were reasonable to award. Neither argument has merit.

Palos relies on Ethridge v. Hwang to argue that because we review under an abuse of discretion standard to determine the reasonableness of the amount of fees awarded, we need the entire record before the trial court. 105 Wn. App. 447, 460, 20 P.3d 958 (2001). But Ethridge is clear that the question of "[w]hether a party is entitled to attorney fees is an issue of law which is reviewed de novo." Id. (citing Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993)); see also Pub Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co., 124 Wn.2d 789, 814, 881 P.2d 1020 (1994) (dividing analysis of attorney fees into separate inquiries of "whether the prevailing party was entitled to attorney fees" and "whether the award of fees was reasonable.").

In the alternative, Palos concedes that while Valleroy is entitled to attorney fees by statute, by declining to award such fees the court exercised its discretion to award "reasonable" fees and costs of exactly zero monetary value. She cites the legal standard for manifest reasonability from Horner for this argument. 151 Wn.2d at 894. Horner does not stand for Palos' asserted proposition. Horner does not apply the manifest reasonability standard to attorney fees, and Palos cites no other authorities nor does she make any further argument to support the novel proposition that a court statutorily bound to award attorney fees may nonetheless choose to award nothing for

22

those mandatory fees. Where no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that the party, after diligent search, has found none. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). The court abused its discretion in denying Valleroy attorney fees and costs.

Valleroy also requests attorney fees on appeal for bringing a contempt action. Our Supreme Court has held that a party which appeals on the issue of RCW 26.09.160 attorney fees and prevails is also entitled to attorney fees on the appeal, "to the extent the fees relate to the issue of contempt." In re Marriage of Rideout, 150 Wn.2d at 359 (citing In re Parentage of Schroeder, 106 Wn. App. 343, 353-54, 22 P.3d 1280 (2001)). "Any attorney fees must relate to the costs of bringing the current contempt proceedings." Schroeder, 106 Wn. App. at 353-54 (citing In re Marriage of Edwards, 83 Wn. App. 715, 725, 924 P.2d 171 (1997)).

As the prevailing party on appeal as to the contempt issue, Valleroy is entitled to attorney fees and costs that relate to the contempt issue. RCW 26.09.140; RAP 18.1(f).

## CONCLUSION

We reverse the trial court's final order on relocation and remand for a new determination of Palos' request to relocate J.V. On remand the trial court may consider the RCW 26.09.520 factors on the existing record, or, at the court's discretion, conduct proceedings to consider new evidence if warranted. Because Palos does not appeal the parenting plan or child support order, those orders remain but may be modified by the court in relation to the new relocation determination. RCW 26.09.260(6).

We also reverse the trial court's denial of attorney fees and costs requested by

Valleroy for bringing a successful contempt motion.  We remand to the trial court for further consideration of an award of attorney fees and costs below and calculation of the amount of fees and costs on appeal.[13]

Coburn, J.

WE CONCUR:

Birk, J.

Hazelrigg, ACJ

---

[13] Given the resolution of these appeals, we need not consider either Palos' or Valleroy's respective challenges to the trial court's denial of their separate motions for reconsideration, which the parties failed to address in their briefs.  See RAP 10.3(a)(6) (requiring appellant's brief to include "argument in support of the issues presented for review").